**Paul A. RASMUSSEN et al., Appellants,**

**v.**

**UNITED STATES of America et al.,**
**Appellees.**

**No. 19677.**

United States Court of Appeals,
Eighth Circuit.

Feb. 5, 1970.

Norton M. Hatlie, St. Paul, Minn., on brief for appellants.

Reed Johnston, Jr., Atty., Dept. of Justice, Washington, D. C., for appellees; William Ruchelshaus, Asst. Atty. Gen., and Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., and Robert G. Renner, U. S. Atty., Minneapolis, Minn., on the brief.

Paul Rodgers, Gen. Counsel, Washington, D. C., amicus curiae, National Association of Regulatory Utility Commissioners.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and HEANEY, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

This is a timely appeal from final order entered by the district court (Judge Larson) dismissing plaintiffs' action for declaratory and injunctive relief against the Postmaster General with respect to discontinuance of certain railroad mail transportation upon the ground that the plaintiffs lack standing to seek judicial review.

The material facts are not in dispute. The Postmaster General, prior to September 6, 1968, had authorized the use of certain passenger trains which oper-

ated to and from St. Paul, Minnesota, as carriers of the mails. However, on September 6, the Post Office announced that effective October 4 and 5, 1968, it would discontinue the use of the Railway Post Offices on these trains.[1] Before the Post Office discontinuance order went into effect, this action was brought against the United States and the Postmaster General seeking judicial review of the Post Office action. The plaintiffs were the cities of Minneapolis and St. Paul and three members of the Minnesota Public Service Commission.[2] The Minnesota Public Service Commission is a state agency charged with the responsibility of regulating and representing the public interest in relation to rail traffic in Minnesota. Minn.Ann. Stat. § 218.041.

The plaintiffs alleged that the Postal Department action would cause a discontinuance of passenger service on the affected trains. The complaint alleged that the postal action was invalid because: (1) The action was in excess of existing Post Office rules in that no formal order was made as required by 39 C.F.R. § 511.11(j) and 39 C.F.R. § 511.-14 (a) (1). (2) No consideration was given to "the effect the loss of mail revenue will have on train operations" as required by 39 C.F.R. § 511.12(f) (2) (ii). (3) The discontinuance was ordered without notice and hearing as required by the Administrative Procedure Act (APA). (4) The action was in excess of the statutory authority of 39 U.S.C.A. § 6203 in that no "order" was entered as required by the APA. 5 U.S.C.A. § 551(6). (5) The Post Office Department rules relating to discontinuance of mail service are vague and do not meet the requirements of the APA.

[1] Included in the files is a lengthy affidavit by Gregory J. Johnson, Director of the Post Office Transportation Division for the Minneapolis region stating that the discontinuance of the railway mail service is the result of a comprehensive study made by the postal department and the exercise of a sound discretion. It is pointed out that the alternate methods of transportation adopted will provide speedy and more efficient mail service at a substantial saving in transportation cost.

[2] The cities of Minneapolis and St. Paul parties below, have not joined in this appeal. This appeal is prosecuted by only members of the Minnesota Public Service Commission.

The defendants moved to dismiss the action in the district court upon the following grounds:

(a) The complaint fails to state a claim upon which relief can be granted.

(b) The Court lacks jurisdiction over the subject matter of the lawsuit.

(c) The plaintiffs lack sufficient standing to maintain the action.

■ The court sustained the motion upon the ground plaintiffs lacked standing to bring the suit. We agree with such determination, and accordingly affirm.

The court allowed the plaintiffs to amend their petition to allege that the railroads here involved had instituted proceedings before the Interstate Commerce Commission to discontinue the passenger trains because of loss of revenue caused by the Postmaster General's action. Upon motion for rehearing, the court held that the amendment had not improved the standing of the plaintiffs. A rehearing was denied. This appeal followed.

The Supreme Court in Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947, indicated that the question of standing "is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." The standing question in this case, therefore, is whether the plaintiffs are the proper parties to bring this action.

■ A party in order to establish standing to bring an action must show the presence of two elements: (1) "A personal stake in the outcome of the controversy as to assure" adverseness. Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947; Data Processing Service Organizations, Inc. (ADAPSO) v. Camp, 8 Cir., 406 F.2d 837, 838, cert. granted 395 U.S. 976, 89 S.Ct. 2128, 23 L.Ed.2d 764. (2) An injury or threat of injury to a legally recognized rather than personal interest. Perkins v. Lukens Steel Co., 310 U.S. 113, 125, 60 S.Ct. 869, 84 L.Ed. 1108;[3] ADAPSO v. Camp, supra.

In this case, we find element (2) missing. In order for the plaintiffs to show that they have a legally recognized interest so that they may seek judicial review, they must show: (1) The statute under which the challenged action was taken (39 U.S.C.A. § 6205) was enacted to protect the plaintiffs as a class. See Hardin v. Kentucky Utility Co., 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787; ADAPSO v. Camp, supra. Cf. Singer & Sons v. Union Pacific Railroad, 311 U.S. 295, 303, 61 S.Ct. 254, 85 L.Ed. 198; Braude v. Wirtz, 9 Cir., 350 F.2d 702, 707; Kansas City Power & Light Co. v. McKay, D.C.Cir., 225 F.2d 924; or (2) Congress has recognized their interest legally by enacting an "aggrieved" persons statute which gives standing to those "aggrieved" by the challenged action.[4] We hold that the plaintiffs do not allege an injury or threat of injury

---

3. In Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968) the Court indicated that the nature of the claim was not a dispositive factor in the question of standing. The Court did indicate, however, that:

"[I]t is both appropriate and necessary to look to the substantive issues for another purpose, namely, to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated. * * * Such inquiries * * * are essential to assure that he is a proper and appropriate party to invoke federal judicial power."

We view this as not inconsistent with Perkins v. Lukens Steel Co., 310 U.S.

113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940) which requires a legally recognized interest to be in jeopardy before a party is held to have standing. Perkins says in the context of Flast v. Cohen that there is no logical nexus between a person claiming only a personal interest and the claim to be adjudicated.

4. Aggrieved person statutes are those which give a person affected by administrative action a "legally recognized interest" so that he can seek judicial review. See Davis, Administrative Law Text § 22.02. For examples of this type of statute see 15 U.S.C. § 77i(a); 15 U.S.C. § 79x(a).

to a legally recognized interest and therefore lack standing.

█ The Post Office Department in discontinuing the use of the trains involved in this case acted under authority of 39 U.S.C.A. § 6205. That statute provides:

> "The Postmaster General may authorize according to the need therefor, new or additional mail transportation service by railroad at the rates or compensation fixed pursuant to this chapter. He may reduce or discontinue service with pro rata reductions in compensation. * * *"

We find nothing in the above quoted statute which indicates that the plaintiffs are to be protected by its provisions. This statute along with others (see 39 U.S.C.A. § 6203) is intended to give the Postmaster General authority to effectively transport the mails. Nothing in this statute nor in any other relevant statute requires subsidization of passenger train service.

█ We are also unable to find any statute which raises the plaintiffs' interest in this case to a legally protected one. Congress has not enacted an "aggrieved persons" statute in relation to 39 U.S.C.A. § 6205. The APA is also of no help to the plaintiffs. The relevant provision of the APA provides:

> "A person * * * adversely affected or aggrieved by agency action *within the meaning of a relevant statute,* is entitled to judicial review thereof." (Emphasis added.) 5 U.S.C.A. § 702.

It is quite clear from the text of the APA that it alone will not supply standing to obtain judicial review. The person must point to a separate "aggrieved person" statute which applies to him.

Duba v. Schuetzle, 8 Cir., 303 F.2d 570; Braude v. Wirtz, 9 Cir., 350 F.2d 702. No such statute is present in this case.

Since we find no injury or threat of injury to a legally recognized interest or an aggrieved person statute which makes the plaintiffs' interest legally recognized, we hold in agreement with the trial court that the plaintiffs lack standing to maintain this action.[5]

█ A separate and distinct basis for affirmance exists. The motion to dismiss, as heretofore noted, is also based upon the grounds of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The trial court did not reach these grounds. In our view, subject matter jurisdiction is lacking and the plaintiffs have failed to state a proper claim.

Five U.S.C.A. § 701(a) precludes judicial review of agency action where "agency action is committed to agency discretion by law." In relation to this APA section the court in Knight Newspapers, Inc., v. United States, 6 Cir., 395 F.2d 353, 358, said:

> "It is well settled that the mere fact that all agency action involves some degree of discretion of judgment does not render every agency action unreviewable under the provisions of the Administrative Procedure Act prohibiting judicial review of agency action by law committed to agency discretion. A court may not review a decision committed to the discretion of an agency pursuant to a permissive type statute, but may do so where the decision was made pursuant to a mandatory type statute, even though the latter decision involves some degree of discretion. Ferry v. Udall, 336 F.2d 706 (C.A. 9, 1964) cert. denied 381 U.S.

5. In the district court, the plaintiffs argued that they had standing based on the doctrine of *parens patriae.* They did not brief that point before this court. The National Association of Regulatory Utilities Commissioners as *Amicus Curiae* reassert this argument. The doctrine of *parens patriae* gives a plaintiff no greater interest than the persons he represents.

It should be quite clear from our discussion of "legally recognized interests" that the people of Minnesota have no legally recognized interest in the discontinuance of the passenger trains in question, and therefore have no standing. Compare, Georgia v. Pennsylvania Railroad Co., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051 (1954).

904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965)."

Section 6205 heretofore quoted in our view is a "permissive" rather than "mandatory" type statute and therefore action taken under it is not reviewable.

Section 6205 specifically authorizes the Postmaster General to authorize railway mail transportation and to reduce or discontinue such service "according to the need therefor." It seems entirely clear from § 6205 and related statutes with respect to the postal service that the decision concerning how to transport the mail is committed to the discretion of the Postmaster General and his authorized representatives. No procedure is prescribed by statute for the termination of rail transportation and the statutes contain no provisions for giving notice or affording a hearing to anybody with respect to termination of rail mail transportation. The statutes charge the Postmaster General with the responsibility for the efficient operation of his department and make no provision requiring him to consider the economic impact of his decisions upon rail transportation.

In Knight Newspapers, Inc., v. United States, 6 Cir., 395 F.2d 353, 357–358, the interpretation and effect of 39 U.S.C.A. § 4055, which permitted the Postmaster General to make refunds of overcharges, the court held:

"[W]e hold that the Postmaster-General's refusal to grant the appellant a postage refund is not subject to judicial review. Section 4055 provides that the Postmaster General 'may' grant a refund only after it is shown to the satisfaction of the Postmaster-General that a refund is justified. The express language of the statute indicates that this decision is committed to the discretion of the Postmaster-General. Since the Administrative

Procedure Act, 5 U.S.C. § 701(a) prohibits judicial review of agency action 'committed to agency discretion by law,' we are without power to review the Postmaster-General's decision denying a postage refund."

In the recent case of City of Chicago v. United States, 396 U.S. 162, 90 S.Ct. 309, 24 L.Ed.2d 340, the Court held that a determination by the Interstate Commerce Commission with respect to train discontinuances made after Commission investigation was subject to review upon application of an aggrieved person. The Court goes on to say: "Whether the Commission should make an investigation of a § 13a(1) discontinuance is of course within its discretion, a matter which is not reviewable. State of New Jersey v. United States, 168 F.Supp. 324, affirmed, Bergen County v. United States, 359 U.S. 27, 79 S.Ct. 607, 3 L. Ed.2d 625."

In Perkins v. Lukens Steel Co., 310 U.S. 113, 131–132, 60 S.Ct. 869, 879, 84 L.Ed. 1108, the Court observes:

"The case before us makes it fitting to remember that 'The interference of the courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief; and we are quite satisfied, that such a power was never intended to be given to them'."

It is true as urged by plaintiffs that Regulation 511.12(f) (2) (ii), set out below,[6] provides that if discontinuance of mail service will reduce a railroad's revenue, inquiry shall be made as to the effect the loss of mail revenues will have on train operations. Since this case was disposed of by motion, the record does not show whether such inquiry was made. No statute requires such inquiry. The regulation says nothing about an economic effect upon train operations

6. The full text of 39 C.F.R. 511.12(f) (2) (ii) provides:

"Discontinuance procedures. If a proposed discontinuance of mail service (entire or partial diversion to highway or to another railroad) will reduce a railroad's revenues, a statement shall be secured from the railroad company as to the effect the loss of mail revenues will have on train operations."

constituting a prohibition of the exercise of discretion to discontinue rail service nor does the regulation require notice or a hearing. We hold that the regulation does not in any way impair the discretionary power given the Postmaster General to terminate mail rail transportation in the exercise of his discretion.

Since discretion with respect to discontinuing mail transporation by rail is given to the Postmaster General, 5 U.S.C.A. § 701 precludes review of the action of the Postmaster General here complained of which is committed to his discretion by law.

The judgment is affirmed.

HEANEY, Circuit Judge, concurs in the result.