IZAAK WALTON LEAGUE OF AMER-
ICA, a not for profit corpora-
tion, Plaintiff,

v.

George W. ST. CLAIR, Thomas Yawkey,
Clifford Hardin, Individually and as
Secretary of Agriculture, Edward P.
Cliff, Individually and as Chief of the
United States Forest Service; Craig
Rupp, Individually and as Supervisor of
the Superior National Forest; Jarle
Leirfallom, Commissioner of Conserva-
tion of the State of Minnesota; Rufus
T. Logan, Commissioner of Taxation of
the State of Minnesota, Defendants.

No. 5–69 Civ. 70.

United States District Court,
D. Minnesota,
Fifth Division.

June 2, 1970.

Popham, Haik, Schnobrich, Kaufman & Doty, by Raymond A. Haik, Minneapolis, Minn., for plaintiff.

Sullivan, McMillan, Hanft & Hastings, by William P. O'Brien and Philip M. Hanft, Duluth, Minn., for defendants St. Clair and Yawkey.

Robert G. Renner, U. S. Atty., and Nelson H. Grubbe, Dept. of Justice, Washington, D.C., for defendants Hardin, Cliff and Rupp.

Eric J. Curtis, Dept. of Agriculture, Milwaukee, Wis.

Douglas M. Head, Atty. Gen., by Donn Christensen and Philip Olfelt, Asst. Attys. Gen., for the State of Minnesota.

NEVILLE, District Judge.

The above case came before the court at Duluth, Minnesota, on March 16, 1970 on the motion of defendants Clifford Hardin, Secretary of Agriculture, Edward P. Cliff, Chief of United States Forest Service, and Craig Rupp, Forest Supervisor, Superior National Forest (the federal defendants) to dismiss the action as to the three of them on the grounds (1) that the complaint fails to state a claim against them upon which relief can be granted; (2) that this is a suit against the United States to which it has not consented and the court therefore lacks jurisdiction; and (3) that the plaintiff lacks standing to sue these defendants who acted and are acting solely in their official capacity as federal employees. Briefs were subsequently submitted.

Involved here is the Boundary Waters Canoe Area (BWCA) managed as public land by the United States and which is a portion of the National Wilderness Preservation System in Minnesota, located in northeastern Minnesota along and near the Canadian boundary. The Izaak Walton League, a nonprofit Illinois corporation, initiated a declaratory judgment action to determine the right, title and interest, if any, of defendants George W. St. Clair and Thomas Yawkey to minerals that may be present in the BWCA. In the event that it is determined that defendants St. Clair and Yawkey do have a right, title and interest to such minerals, plaintiff seeks to enjoin the federal defendants from granting permission to St. Clair and to Yawkey to enter into the BWCA for the purpose of drilling, exploring or removing minerals it being alleged and made to appear by counsels' statements at the hearing that heretofore said federal defendants have permitted such entry. Diversity of citizenship exists as to all parties and clearly more than $10,000 is involved, even if there be no other basis for this court's jurisdiction such as 28 U.S.C. § 1361 conferring on this court jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty. The officials of the State of Minnesota who are named as parties defendant have joined with the plaintiff in seeking injunctive relief against, and opposing dismissal of, the federal defendants.

As to the *first* ground, i. e., failure to state a claim upon which relief can be granted, the federal defendants are asking for a dismissal or in essence a summary judgment in their favor. The Court of Appeals for the Eighth Circuit long has cast a jaundiced eye on the granting of such relief, stating for instance in Thomason v. Hospital T.V. Rentals, Inc., 272 F.2d 263, 266 (8th Cir. 1959):

"The attitude of this Court toward attempts to terminate litigation, believed to be without merit, by dismissing a complaint for insufficiency of statement has been adequately stated

[in prior decisions of this court, citations omitted]. No matter how reasonably it may be surmised or predicted that a plaintiff will be unable to establish on a trial the claim stated in his complaint or to obtain any relief, he is, nevertheless, entitled to make the attempt unless it appears beyond doubt that he can prove no set of facts in support of his claim which would entitle him to any relief. Conley v. Gibson, supra, at pages 45–48 of 355 U.S., at pages 101–103 of 78 S.Ct."

See 1A Barron & Holtzoff, Federal Practice and Procedure § 255 to the same effect.

■ While the court does not at this time opine as to the likelihood of plaintiff's success at a trial on the merits, sufficient allegations appear in the plaintiff's complaint which if proved would tend to support its cause of action. The court believes it cannot grant the motion of the federal defendants on this ground.

■■ The *second* ground urged for a dismissal as to the federal defendants is sovereign immunity, i. e., that this is an unconsented suit against the United States. The United States Supreme Court has long held that "suits against government agents, specifically affecting property in which the United States claimed an interest, were barred by the doctrine of sovereign immunity." Malone v. Bowdoin, 369 U.S. 643, 646, 82 S.Ct. 980, 983, 8 L.Ed.2d 168 (1962); See Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Thus under the doctrine of sovereign immunity it is of no import that the named federal defendants are individuals and named as parties rather than the United States Government itself. In both *Malone* and *Larson* the Supreme Court set forth two recognized exceptions to the sovereign immunity doctrine: (1) actions where the allegation is that officers of the United States acted beyond their statutory powers and (2) cases where, even though officers acted within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void. Malone v. Bowdoin, 369 U.S. at 647, 82 S. Ct. 980. In *Malone*, the Court held that the doctrine of sovereign immunity precluded a suit against a Forest Service Officer of the United States Department of Agriculture. The Court did recognize the two exceptions to the doctrine as outlined above but held that since the plaintiff had not made an affirmative allegation of any relevant statutory limitation upon the Administrator's powers and made no claim as to the unconstitutionality of any action the suit failed as an effort to enjoin the United States Government.

Such allegations are in effect present here. While it is true that plaintiff's complaint does not allege *in haec verba* that defendants have done or are threatening to do an unlawful act, by violating their management authority over the National Forests or the BWCA but is directed for the most part to defendants St. Clair and Yawkey, clearly it is pregnant with the claim and assertion that granting permission to these latter defendants is "inconsistent with the state and federal zoning laws and the public policies of the United States and the State of Minnesota which have been established to regulate mineral development in the BWCA." This it seems to the court is a sufficient allegation to bring this case which is one for injunctive relief against the federal defendants within the first exception above set forth to the doctrine of sovereign immunity.

The court subscribes to the language used in Justice Douglas' dissent in *Malone* (369 U.S. at p. 652, 82 S.Ct. at p. 986) that "Sovereign immunity has become more and more out of date, as the powers of the Government and its vast bureaucracy have increased." Many cases seem to acknowledge that all of the prior United States Supreme Court decisions on the question of sovereign immunity cannot easily be reconciled. In addition to *Larson* and *Malone*, see Land v. Dol-

lar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); Federal Housing Admin., Region No. 4 v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). It is noted that in the two most recent cases on standing, Association of Data Processing Servicing Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (3/3/70); and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L. Ed.2d 192 (3/3/70), one or more of the defendants in each case were federal employees and apparently no question was raised concerning sovereign immunity, despite the fact that both cases challenged actions taken by them as government officials.

In the recent case of State of Washington v. Udall, 417 F.2d 1310 (9th Cir. 1969), it was held that an allegation that a government official has exceeded his statutory authority brings the case squarely within one of the stated exceptions to the sovereign immunity doctrine. The defendants herein argue that *Larson* qualified the two stated exceptions with regard to the disposition of unquestioned sovereign property and that in such cases a suit may fail as one against the sovereign even if it is alleged that the official acted unconstitutionally or beyond his statutory powers. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. at 691 f.n. 11, 69 S.Ct. 1457. However, it is noted that the above qualification is not applicable if the relief requested can be granted "by merely ordering the cessation of the conduct complained of * * *." *Larson, supra,* 337 U.S. at 691 f.n. 11, 69 S. Ct. at 1462. In State of Washington v. Udall, *supra,* the court stated:

"We believe that the Court's footnote 11 in *Larson* means that the purposes for the doctrine of sovereign immunity may be controlling in some suits against officers so that suits must be dismissed as suits against the Government, even though the officers were not acting pursuant to valid statutory authority, because the relief sought would work an intolerable burden on governmental functions, out-

weighing any consideration of private harm." 417 F.2d at 1318.

The court then held that the relief sought would not be an intolerable burden on the government and that it would be proper to consider the complaint on its merits to determine whether the Secretary of the Interior or his subordinates exceeded their statutory authority.

■ In the instant case there has been no past quasi judicial action of an administrative body which this court is asked to review, such as an order entered after an adverse hearing. Plaintiff is seeking to enjoin the possible future action of the federal defendants, premised with good reason to believe based on past actions that the same may continue, permitting defendants St. Clair and Yawkey to drill, explore or remove minerals from the BWCA. The plaintiff alleges that if such permission were to be granted by the federal defendants the United States Government would be permitting action directly inconsistent with the federal statutes and regulations which have been established to regulate the mineral development within the BWCA. The court can see no difference between allowing this type of action and that in which a court is asked to review the quasi judicial action previously taken by an administrative agency. The very purpose of a declaratory judgment proceeding is to permit a party to bring suit before action is taken which may wreak harm. Were the plaintiff in this case to wait until St. Clair and Yawkey actually explored and drilled for minerals, the case would be moot at least partially as to the land already altered.

■ Certainly the relief sought by the plaintiff is not "an intolerable burden" on governmental functions if granted and would seem to fall within the well-established exception to the sovereign immunity doctrine relating to an allegation that government officials are exceeding their statutory powers. The court presently does not pass on the merits of this question but does believe that the merits should be considered and

not be barred at this preliminary stage by the doctrine of sovereign immunity, giving due consideration also to the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

 The *third* ground asserted by the federal defendants in urging a dismissal is that plaintiff lacks standing to sue. The question of standing it seems to the court has been settled by the two recent Supreme Court cases of *Association of Data Processing* and *Barlow* above cited. Prior to these decisions, this court reviewed a number of past decisions in Association of Data Processing Service Organizations, Inc. v. Camp., 279 F.Supp. 675 (1968), aff'd 406 F.2d 837 (8th Cir. 1969), which decisions were then thought to be controlling. No great purpose is served by reviewing these former decisions since, as this court reads it, the United States Supreme Court in *Association of Data Processing* overruled for the most part its past rulings and concepts as to standing, particularly Tennessee Elec. Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939), and its progeny and followed the philosophy and language of the more recent case of Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), a taxpayer's suit.

*Association of Data Processing* establishes two requirements for standing:

1. "As we recently stated in Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947, '* * [I]n terms of Article III limitations on federal court jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' " 90 S.Ct. at 829.

Clearly here the plaintiff, Izaak Walton League, will present the case in "an adversary context." The League has a long history of activity in conservation matters and natural resource preservation. It has been active for many years

in urging congressional and other legislative action. In fact it is stated that it bought a substantial quantity of the land now forming the Boundary Waters Canoe Area while working to secure congressional establishment of the area and later deeded or resold the same to the Federal Government. There is no doubt in the court's mind that plaintiff actively will pursue in an adversary way the prosecution of this suit and has:

"* * * alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions?" 369 U.S. 186, at 204, 82 S.Ct. 691, at 703, 7 L.Ed.2d 663 in Baker v. Carr.

There will be no "collusive suit" nor a mere nominal presentation. This first requirement of *Association of Data Processing* and *Barlow* is thus met.

2. The second *Association of Data Processing* requirement, a nonconstitutional one, is that plaintiff must allege "that the challenged action has caused him injury in fact, economic or otherwise." It is of course a fact that plaintiff does not own any of the land nor does it claim to own any mineral rights in the Boundary Waters Canoe Area, nor does it have any real economic interest in the outcome of the suit since it is a not-for-profit corporation. Justice Brennan's *Association of Data Processing* and *Barlow* dissent joined in by Justice White vigorously argues that this second requirement is unnecessary, troublesome and will only cause confusion. It also draws a distinction between standing, reviewability and the merits. Whatsoever, it is clear in the case at bar that this second requirement is met in any event as "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question" which the *Association of Data Processing* Court states to include:

"* * * That interest, at times, may reflect 'aesthetic conservational, and recreational' as well as economic

values. Scenic Hudson Preservation Conf. v. Federal Power Commission, 2 Cir., 354 F.2d 608, 616; Office of Communication of United Church of Christ v. [FCC], 123 U.S.App.D.C. 328, 359 F.2d 994, 1000–1006. A person or a family may have a spiritual stake in First Amendment values sufficient to give him standing to raise issues concerning the Establishment Clause and the Free Exercise Clause. Abington School District v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844. We mention these noneconomic values to emphasize that standing may stem from them as well as from the economic injury on which petitioner relies here. Certainly he who is 'likely to be financially' injured, [Federal Communications] Commission v. Sanders Brothers Radio Station, 309 U.S., [470] at 477, 60 S.Ct. [693] at 698, 84 L.Ed. 869, may be a reliable private attorney general to litigate the issues of the public interest in the present case." 90 S.Ct. at 830.

The Izaak Walton League is not a "johnny-come-lately" or an *ad hoc* organization and its interest in the wilderness movement is continuing, basic and deep. It therefore has an "aesthetic, conservational and recreational" interest to protect. This gives it standing and meets the second requirement of *Association of Data Processing*.

Other cases supporting this holding to a greater or lesser extent are: Scenic Hudson Preservation Conf. v. Federal Power Commission, 354 F.2d 608 (2nd Cir. 1965); Citizens Committee for Hudson Valley v. Volpe, 302 F.Supp. 1083 (S.D.N.Y.1969); Nashville I-40 Steering Committee v. Ellington, 387 F. 2d 179 (6th Cir. 1967); Road Review League, Town of Bedford v. Boyd, 270 F.Supp. 650 (S.D.N.Y.1967); Powelton Civic Home Owners Ass'n v. Department of Housing and Urban Development, 284 F.Supp. 809 (E.D.Pa.1968); Western Addition Community Organization v. Weaver, 294 F.Supp. 433 (N.D.Cal. 1968); Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920 (2nd Cir. 1968); Parker v. United States, 309 F.Supp. 593 (D.Colo.1970).

The recent case of Rasmussen v. United States, 421 F.2d 776 (8th Cir. 1970), held that the cities of Minneapolis, St. Paul and the Minnesota Public Service Commission lacked standing to sue the Postmaster General with respect to his discontinuance of certain railroad mail transportation, resulting in the cessation or threatened cessation of passenger service on the affected trains. The court held plaintiffs must show that the statute under which the challenged action was taken was enacted to protect the plaintiffs as a class or that Congress enacted an "aggrieved" persons statute. The latter is not true in the case at bar but, if *Association of Data Processing* did not in fact modify the rationale of the *Rasmussen* decision, it would seem that the first requirement is met here in any event in view of the Congressional declaration that it is "the policy of the Congress to secure for the American People of present and future generations the benefits of an enduring resource of wilderness" 16 U.S.C. § 1131(a). If an organization such as plaintiff cannot challenge governmental activity in view of this declaration, it is hard to think of anyone who would have standing.

Finally, *Association of Data Processing* stands for the proposition that the Administrative Procedure Act is to be construed generously and "not grudgingly but as serving a broadly remedial purpose." To preclude judicial review, an act of Congress "if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it." There has not been brought to the court's attention any prohibition in the various acts of Congress relating to National Forests, Wilderness areas or the Boundary Waters Canoe Area prohibiting or proscribing judicial review.

For the reasons above the motion of the federal defendants for dismissal is denied. The court does not however at this time and without further proceedings or a trial express any opinion on

the merits of plaintiff's claims or whether under the existing statutes and acts of Congress and particularly 16 U. S.C. § 1133(d) (2) plaintiff ultimately will or will not prevail.