525 P.2d 407

**Frank S. HUERTA, Appellant,**

v.

**HEALTH AND SOCIAL SERVICES DEPARTMENT of the State of New Mexico, Appellee.**

**No. 1379.**

Court of Appeals of New Mexico.

July 24, 1974.

Gary J. Martone, Richard C. Bosson, Albuquerque, for appellant.

David L. Norvell, Atty. Gen., James G. Huber, Agency Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge.

Huerta appeals a decision by HSS (Health and Social Services Department) that his household (Huerta and his wife) was not eligible for participation in the food stamp program. HSS determined that after all applicable allowances which reduced income under HSS regulations the "net food stamp income" exceeded the maximum income allowable in determining eligibility. The dispute is concerned with what may be considered as "income" in determining eligibility. The dispute involves disability insurance benefits.

In 1972, Huerta obtained two loans from a finance company. As a part of the loan transaction he purchased disability insurance. In August, 1973, when eligibility for food stamps was determined, disability insurance benefits were being paid. One policy paid $91.04 per month and was referred to as the "house payment." The other policy paid $26.00 per month and was referred to as the "note payment." Both policies provided that benefits were to be paid to the "creditor policyholder" (the finance company) and applied against the outstanding unpaid loan indebtedness.

The record indicates the disability benefits were paid directly to the finance company.

HSS treated the disability benefits as income in determining food stamp eligibility. It did so on the basis of HSS Regulation 262.43(B)(10) which defines income to include:

"Payments in money, except for those for medical costs, made on behalf of the household by a person other than a member of the household. . . . "

Huerta contends that the interpretation of the above quoted regulation to include the disability insurance benefits is unreasonable because other parts of the regulation (not quoted here) refer to income which has the effect of putting cash into the hands of the household. He claims that "he has no added purchasing power because the insurance payments never go directly to him." He claims the regulation was never intended to apply to an "illusory benefit" and that Huerta should not be penalized for his foresight in purchasing the insurance.

■ By its wording, the quoted regulation does not require cash in Huerta's hands. The regulation refers to money payments on behalf of the household. The record shows such payments on Huerta's behalf. It does not follow that Huerta has no added purchasing power because Huerta does not directly receive the benefit payments. The payments are on outstanding loans owed by Huerta; the disability benefits are making loan payments, thus freeing Huerta from making the payments with other income. Thus, they do increase his purchasing power. The benefits are not illusory. Huerta is not being penalized for having purchased insurance; the insurance payments are a benefit.

HSS correctly determined that the disability insurance benefits are income under the quoted regulation.

Huerta does not assert that the quoted regulation, as worded, is unconstitutional. He does claim that the interpretation of the regulation to include disability benefit pay-

ments violates due process. This argument has four parts which are stated and answered below.

█ First, he asserts that the quoted regulation sets up an irrebuttable presumption that, because two of his debts are covered by disability insurance, the insurance payments increase his food purchasing power. See U. S. Dept. of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973). We disagree. The purpose of the food stamp program is to raise levels of nutrition among low income households. U. S. Dept. of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). The quoted regulation deals with a determination of income; it sets up no presumptions of any kind concerning purchasing power. Other regulations, not involved in this case, deal with allowances reducing income once income has been determined.

Second, he contends that he is entitled to an " 'individualized determination' " on the basis of "the real facts of his situation." That is what he has received in this case.

Third, he claims the regulation has no rational relation to the stated purpose of the food stamp act. The regulation deals with income and is rationally related to determining the low income beneficiaries of the program.

█ Fourth, he asserts the regulation is "contrary to the fundamental concepts of fairness and contrary to the altruistic ends of" the food stamp act (which may be found at 7 U.S.C. § 2011). It is neither unfair nor contrary to the purpose of the act to consider payments made by another person on behalf of Huerta in calculating Huerta's income for eligibility purposes.

█ The quoted regulation, as applied to Huerta, did not deprive him of due process of law. Compare Padilla v. Health and Social Services Department, 84 N.M. 140, 500 P.2d 425 (Ct.App.1972).

The decision denying eligibility for food stamp benefits is affirmed.

It is so ordered.

HERNANDEZ, J., concurs.

SUTIN, J., dissenting.

SUTIN, Judge (dissenting).

I dissent.

A. *This Court lacks jurisdiction to determine this case.*

Section 13–18–3(D), N.M.S.A.1953 (Repl.Vol. 3, 1973 Supp.) provides in part:

The director shall review the record of the proceedings and shall make a decision thereon. . . .

Section 13–18–4(A), supra, provides that the notice of appeal shall be taken within 30 days after receiving the written notice of the decision of the director.

The record does not show that the director reviewed the proceedings or made a decision. No decision having been made, no right to appeal existed, and this Court lacks jurisdiction to hear the case.

This case should be remanded to the director of the Health and Social Services Department for review of the record and for a decision.

B. *Disability payments were not income.*

On June 26, 1972, Huerta borrowed from Interstate Securities Co., Inc., for repayment in five years, a total sum of $5,462.40, payable at $91.04 per month. He elected to obtain life insurance coverage with Old Security Life Insurance Company in the amount of $10,000.00. For disability, Huerta was to receive $91.-04 per month indemnity. The policy also provided that the indemnity shall be paid to the Creditor Policyholder, Interstate, who shall apply the indemnity to reduce the unpaid indebtedness of Huerta.

On June 30, 1972, Huerta borrowed from Interstate the total sum of $650.00 payable at $26.00 per month. The same policy of insurance was obtained in which Huerta received $26.00 per month for disability.

When Huerta became disabled, the insurance company made monthly payments to Interstate. It used the payments to re-

duce the indebtedness of Huerta on his loans from Interstate.

At the hearing held on October 4, 1973, Huerta contended that disability payments of $117.00 per month paid by Old Security Life Insurance Company was an insurance settlement under HSS Regulation 262.-44(H) which provides in part that monies received from insurance settlements were not income but are treated as a resource; that the decision of this hearing shall be made on this point alone.

The hearing officer found that Interstate paid on behalf of Huerta, *a house payment of $91.00 per month* and a payment of $26.00 per month *on a note* which Huerta owed to Interstate. Both were actually payments on two notes. The total of these payments was treated as income under HSS Regulation 262.43(B)(10), and the hearing officer concluded that Huerta's income (received and imputed) was larger than the maximum allowable and Mr. Huerta was ineligible for participation in the food stamp program. In United States Department of Agriculture v. Moreno, cited in the majority opinion, the Court explained the federal food stamp program as follows:

> The federal food stamp program was established in 1964 in an effort to alleviate hunger and malnutrition among the more needy segments of our society. 7 USC § 2011 [7 USCS § 2011]. Eligibility for participation in the program is determined on a household rather than an individual basis. 7 CFR § 271.3(a). An eligible household purchases sufficient food stamps to provide that household with a nutritionally adequate diet. The household pays for the stamps at a reduced rate based upon its size and cumulative income. The food stamps are then used to purchase food at retail stores, and the Government redeems the stamps at face value, thereby paying the difference between the actual cost of the food and the amount paid by the household for the stamps. See 7 USC §§ 2013(a), 2016, 2025(a) [7 USCS §§ 2013(a), 2016, 2025(a)].

In the instant case, the insurance payments were not "made on behalf of the household" by the insurance company. They were made on behalf of Interstate who received the money and paid it to themselves to protect their loans. The insurance policy specifically provided that "All benefits and indemnities shall be paid to the Creditor Policyholder . . .," which Creditor Policyholder was designated in the Certificate Schedule as Interstate Securities Company, Inc.

HSS Regulation 262.44(H) reads as follows:

> The following will not be considered as income to assistance or non-assistance households.
>
> \*     \*     \*     \*     \*     \*
>
> H. Monies received from insurance settlements, sale of property . . . cash prizes, awards and gifts . . . inheritances, retroactive lump sum Social Security and Railroad Retirement pension payments; income tax refunds, and similar non-recurring lump sum payments. These monies will, however, be treated as a resource.

The term "insurance settlements" does not mean "compromise and settlement of insurance claims." The word "settlement" has several different meanings. The word "pay" is synonymous with the word "settle." Webster's Third New International Dictionary (1966), p. 1659. A "settlement" can mean the discharge of an indebtedness, so that payments from the insurance company to Interstate are "insurance settlements."

Congress stated its declaration of policy as follows:

> It is hereby declared to be the policy of Congress, in order to promote the general welfare, that the Nation's abundance of food should be utilized cooperatively by the States, the Federal Government, local governmental units and other agencies to safeguard the health and well-being of the Nation's population and raise levels of nutrition among low-income households. The Congress hereby finds that the limited food pur-

chasing power of low-income households contributes to hunger and malnutrition among members of such households. The Congress further finds that increased utilization of food in establishing and maintaining adequate national levels of nutrition will promote the distribution in a beneficial manner of our agricultural abundances and will strengthen our agricultural economy, as well as result in more orderly marketing and distribution of food. To alleviate such hunger and malnutrition, a food stamp program is herein authorized which will permit low-income households to purchase a nutritionally adequate diet through normal channels of trade. 7 USC § 2011 [7 USCS § 2011].

We should interpret the regulations to meet the policy of the food stamp program. This is what the Supreme Court of the United States did in interpreting the Food Stamp Act in United States Department of Agriculture v. Murry, and United States Department of Agriculture v. Moreno, cited in the majority opinion.

The majority feeling otherwise, I dissent.