**Karen HEIN, Individually and on behalf of all other persons similarly situated, Plaintiff,**

**v.**

**Kevin J. BURNS, Individually and in his capacity as Commissioner of Social Services, and Elizabeth Masterson, Individually and in her capacity as Director of the Muscatine County Department of Social Services, Defendants.**

**Civ. No. 73-240-1.**

United States District Court,
S. D. Iowa, C. D.

Oct. 10, 1975.

Robert D. Bartels, Iowa City, Iowa, for plaintiff.

Richard C. Turner, Atty. Gen., Lorna L. Williams, Special Asst. Atty. Gen., Thomas R. Hronek, Asst. Atty. Gen., for defendants.

## MEMORANDUM

Before STEPHENSON, Circuit Judge, HANSON, Chief District Judge, and STUART, District Judge.

STUART, District Judge.

This is a class action under Rule 23 of the Federal Rules of Civil Procedure challenging certain departmental regulations which have the effect of requiring persons who receive a travel allowance under the Federal Government's Individual Education and Training Plan to pay more for food stamps than they would otherwise, even though all of the travel allowance is spent for the necessary travel. Plaintiff claims that both State and Federal Regulations are inconsistent with the Food Stamp Act, 7 U.S.C. §§ 2011 and 2014, and violate her rights to Equal Protection and Due Process under the Fifth and Fourteenth Amendments to the United States Constitution. The case is before this Court on cross motions for summary judgment based on stipulated facts.

This Court has jurisdiction of plaintiff's statutory challenge to the State Regulations by 42 U.S.C. § 1983 and 28 U.S.C. § 1343. Further 28 U.S.C. § 1337 provides this Court with original jurisdiction to consider plaintiff's challenge to the Federal Regulatory scheme. This section grants to the district courts "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce * * *". See *Moreno v. United States Department of Agriculture* (D.D.C.1972), 345 F.Supp. 310, 313, aff'd 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782; *Murphy v. Colonial Federal Savings and Loan Ass'n* (2d Cir. 1967), 388 F.2d 609, 615.

On March 4, 1974 this three-judge court, properly convened pursuant to 28 U.S.C. §§ 2281 and 2284, held the state regulation in the Iowa State Department of Social Services Manual, section VII, ch. 3, p. 16, Item d[1] [hereinafter item d] was inconsistent with 7 C.F.R. § 271.3(c)(1)(iii)(e)[2] as then written, and issued an injunction consistent with such holding.

The State of Iowa appealed to the United States Supreme Court, which, on December 12, 1974, vacated the judgment entered thereon and remanded the case to this Court "for consideration in light of the revision of the regulations of the Department of Agriculture. See 7 C.F.R. § 271.3(c)(1)(iii)(f)."[3] The revised regulation made it clear that the position of the Department of Agriculture and the Iowa Department of Social Services was the same insofar as the travel allowances were concerned in computing the cost of food stamps.

1. Iowa State Department of Social Services Manual, Section VII, Ch. 3, p. 13, item j specifically requires inclusion of a transportation allowance in gross income. Item d then denies this sum as a deduction in determining Adjusted Net Income.

2. This section provided in part:
(iii) Deductions for the following household expenses shall be made. * * *
(e) Educational expenses which are for tuition and mandatory school fees including such expenses which are covered by scholarships, educational grants, loans, fellowships and veteran's educational benefits.

3. 39 Fed.Reg. 26003. *Burns v. Hein*, 419 U.S. 989, 95 S.Ct. 297, 42 L.Ed.2d 260 (1974). *See also* 39 Fed.Reg. where the secretary said " * * * the educational expenses which may be deducted have not been changed but have been revised for purposes of clarity."

Proper federal employees have now been made parties defendant and this Court must determine, on cross-motions for summary judgment:

(1) Whether the regulations in question are subject to judicial review.

(2) Whether the pertinent state and federal regulations are in conflict with the Food Stamp Act.[4]

(3) Whether such regulations violate plaintiffs rights to due process and equal protection under the Fifth and Fourteenth Amendments.

## I. Facts

Plaintiff is a divorced mother of two children residing in Muscatine, Iowa. Except for a short period of time, the duration and cause of which are not relevant here, she has, at all times material, been eligible for and received food stamp assistance under the Food Stamp Act of 1964 and Iowa Code Sections 234.6 and 234.11. In addition, Mrs. Hein is participating in an Individual Education and Training Plan under the auspices of which she has been receiving training as a nurse at St. Lukes School of Nursing in Davenport, Iowa. To help defray the cost of commuting from Muscatine to Davenport, plaintiff receives a travel allowance of $44 per month from the government all of which is spent for travel.

Pursuant to the above cited federal and state regulations, this travel allowance is included as an item of income for determining "Adjusted Net Income". Since this latter item determines the amount an individual must pay for the allotment of food stamps,[5] plaintiff and other members of the class she represents must pay more for food stamp aid because they are receiving travel allowances, even though the allowances are spent entirely to defray commuting ex-

penses and do not increase their food purchasing power.[6] As a result, participation in the training program and receipt of the travel allowance leaves participants with less food purchasing power than would be available if they did not take part in the program, thus resulting in the actual receipt of less than the contemplated benefits of each program individually.

## II. Jurisdiction

Federal defendants challenge the jurisdiction of this Court on two grounds: (A) As the state regulations and federal regulations are identical in effect and as state regulations are enacted to comply with federal requirements, the complaint is an attack on the federal regulations and the suit is precluded by the doctrine of sovereign immunity; (B) the determination of what is and what is not income for the purposes of the Food Stamp Act is committed to agency discretion by law within the meaning of the Administrative Procedure Act, Section 701(a)(2) and is therefore not subject to judicial review. In the context of the claims pressed by the plaintiffs in this case, the Court finds these two arguments unpersuasive.

### (A)

The Court holds this suit is not barred by the doctrine of sovereign immunity. While the United States Supreme Court has long held that suits against government agents or agencies which specifically affect property in which the United States has an interest are barred by the doctrine of sovereign immunity, *Malone v. Bowdoin* (1962), 369 U.S. 643, 646, 82 S.Ct. 980, 8 L.Ed.2d 168; *Larson v. Domestic & Foreign Commerce Corp.* (1949), 337 U.S. 682, 688–89, 69 S.Ct. 1457, 93 L.Ed. 1628

---

4. 7 U.S.C. § 2011 et seq. (1970).

5. The specific quantity of food stamps allotted per family is based on family size. However, once that determination is made, the price each participant must pay is based on their "Adjusted Net Income".

6. The travel allowance is based on actually commuted expense. $44 per month is the maximum allowance, and is only a percentage of the actually computed cost.

the Supreme Court has also set forth two exceptions to this general rule; (1) actions in which it is alleged that officers of the United States acted beyond their statutory powers, and (2) cases where, even though officers acted within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void. *Malone v. Bowdoin,* supra at 647, 82 S.Ct. 980; *Larson v. Domestic & Foreign Commerce Corp.* (1949), 337 U.S. 682, 689–690, 69 S.Ct. 1457, 93 L.Ed. 1628; *Association of Northwest Steelheaders v. Army Corps of Engineers* (9th Cir., 1973), 485 F.2d 67, 69; *California Legislative Council for Older Americans v. Weinberger* (E.D. Cal.1974), 375 F.Supp. 216, 219; *Izaak Walton League of America v. St. Clair* (D.Minn., 1970), 313 F.Supp. 1312, 1314. In these two situations, courts take the position that a suit against a government officer is not a suit against the sovereign because the actions of the officer are beyond the power delegated by statute and because such actions cannot constitutionally be sanctioned by the sovereign. The claims which the plaintiffs seek to press in this action fall squarely within these recognized exceptions to the general bar of sovereign immunity. The plaintiffs assert basically two claims: (1) the regulations (both state and federal) are in conflict with the Food Stamp Act which created the right to make regulations, and (2) the regulations as enacted violate Constitutional guarantees of due process and equal protection.

■ The fact that a case falls within an exception to the doctrine does not end inquiry, however, for it must be further shown that granting the relief will not place an intolerable burden upon governmental functions. This is not necessarily an absolute ban upon all such suits which seek some affirmative action but rather it is a requirement that the court consider whether the burden on governmental functions outweighs any consideration of private harm. *Association of Northwest Steelheaders v. Army Corps of Engineers, supra,* at 69–70; *Washington v. Udall* (9th Cir., 1969), 417 F.2d 1310, 1317–18; *Izaak Walton League of America v. St. Clair, supra,* at 1315. It appears that the type of relief sought by the plaintiffs does not place an undue burden upon governmental functions. A number of recent cases have involved a challenge to agency action which, if successful, would require some expansion of welfare benefits. See *United States Dept. of Agriculture v. Moreno* (1973), 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782; *Rodway v. United States Dept. of Agriculture* (1975), 168 U.S.App.D.C. 387, 514 F.2d 809; *California Council for Older Americans v. Weinberger* (E. D.Cal., 1974), 375 F.Supp. 216, 219; *Huerta v. Health and Social Services Dept.* (1974), 86 N.M. 480, 525 P.2d 407. Just as these suits were not barred by the doctrine of sovereign immunity, the case at hand is not so barred.

(B)

The second jurisdictional challenge of the defendants must also fail. The defendants argue that this suit is rendered non-reviewable by 5 U.S.C. § 701(a)(2) of the Administrative Procedure Act which provides that agency actions are subject to judicial review except so far as "agency action is committed to agency discretion by law." The defendants point specifically to 7 U.S.C. § 2013(a) which provides that:

The Secretary is authorized to formulate and administer a food stamp program under which, at the request of the State agency, eligible households within the State shall be provided with an opportunity to obtain a nutritionally adequate diet through issuance to them of a coupon allotment * * *.

Subsection (c) of that section provides that:

The Secretary shall issue such regulations, not inconsistent with this chapter, as he deems necessary or appro-

priate for the effective and efficient administration of the food stamp program.

In light of these provisions, the defendants argue that the definition of income which determines eligibility and the amount to be charged to the recipient for coupon allotments is committed by law to agency discretion and is not reviewable by the courts.

■ First of all, judicial review is not sought here pursuant to the Administrative Procedure Act, but rather under 42 U.S.C. § 1983 to redress deprivations under color of state law. Secondly, the agency discretion exception is a narrow one. S.Rep. No. 752, 76th Cong., 1st Sess. 26 (1945). See *Citizens to Preserve Overton Park v. Volpe* (1971), 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136; *Adams v. Richardson* (1973), 156 U.S.App.D.C. 267, 480 F.2d 1159; *Barlow v. Collins* (1970), 397 U.S. 159, 166–67, 90 S.Ct. 832, 25 L.Ed.2d 192. Statutory language which grants discretion does not necessarily block judicial review, for almost all agency actions involve some discretion and Congress did not intend to cut off judicial review in all agency actions. *Ferry v. Udall* (9th Cir., 1964), 336 F.2d 706, 711, cert. denied 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286. Whether agency action is committed to agency discretion within the meaning of the statute "depends upon whether Congress has manifested in the statutes governing the agency action in question an intent to cut off review". *Rockbridge v. Lincoln* (9th Cir. 1971), 449 F.2d 567, 570; *Cappadora v. Celezrezze* (2d Cir., 1966), 356 F.2d 1, 6. Furthermore, "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review". *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed. 2d 681; *Barlow v. Collins*, supra, at 166–67, 90 S.Ct. 832.

■ No provisions of the Food Stamp Act preclude judicial review. Provisions which authorize a secretary to "prescribe such regulations as he may deem proper to carry out the provisions of this chapter" do not establish that Congress intended to cut off avenues of judicial review. *Barlow v. Collins*, supra, at 165, 90 S.Ct. at 837. The Supreme Court in Barlow went on to conclude that:

> On the contrary, since the only ' or principal dispute relates to the meaning of the statutory term, the controversy must ultimately be resolved, not on the basis of matters within the special competence of the Secretary, but by judicial application of cannons of statutory construction. *Id.* at 166, 90 S.Ct. at 837.

Courts thus may entertain suits to determine whether regulations promulgated to administer an Act are consistent with that act. *Ferry v. Udall*, supra, at 713. When viewed in such a light, it is clear that the questions brought before the court here are not committed by Congress solely to agency discretion and are reviewable in the courts.

■ Even if this suit did not fit neatly into a category where it is judicially reviewable under the Administrative Procedure Act, it could not be blocked by the "agency discretion exception". Certain types of suits are not blocked by this exception. The Supreme Court has recognized that "where the matter is peradventure clear, where the agency is clearly derelict in failing to act, where the inaction or action turns on a mistake of law, then judicial relief is often available". See *Panama Canal Co. v. Grace Line, Inc.* (1958), 356 U.S. 309, 318, 78 S.Ct. 752, 757, 2 L.Ed.2d 788; *Harmon v. Brucker* (1958) 355 U.S. 579, 581–82, 78 S.Ct. 433, 2 L.Ed.2d 503. Actions of an agency in excess of its delegated powers and contrary to statute are reviewable. *Harmon v. Brucker*, supra. A district court has jurisdiction to construe the statute involved to determine whether a government agent exceeded his or her statutory grant of power. *Id.* at 582, 78

S.Ct. 433. Furthermore, an agency action which is challenged as a denial of constitutional rights can be reviewed in a court of law. *Webster Groves Trust Co. v. Saxon* (8th Cir., 1966), 370 F.2d 381, 387; *Gonzalez v. Freeman* (D.C.Cir., 1964), 118 U.S.App.D.C. 180, 334 F.2d 570, 575. A third type of action to which the doctrine of nonreviewability is no barrier is one which challenges the acts of a government agent which are arbitrary, capricious, or an abuse of discretion. *Webster Groves Trust Co. v. Saxon, supra.* No statute commits to an agent the discretion to act in excess of a statutory grant of power, to act arbitrarily or capriciously, or to unlawfully discriminate in violation of the constitution and such acts are subject to restraint by the courts. *Id.* at 387.

These challenges are of a type which are not committed to agency discretion so as to preclude judicial review, and they fall within recognized exceptions to the doctrine of nonreviewability. The challenges of the plaintiffs in this action are not barred by § 701(a) of the Administrative Procedure Act.

### III. Conflict between statute and regulations.

■ As a basic premise for consideration, the Court notes that the Act, and therefore necessarily the regulations promulgated pursuant thereto, are remedial in nature and thus entitled to a broad construction consistent with this purpose. To treat the Act otherwise would be "to abuse the interpretative process and to frustrate the announced will of the people". *A. H. Phillips, Inc. v. Walling* (1945), 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095. Thus the Court must seek to effectuate the Congressional mandate as evidenced by the statement:

It is hereby declared to be the policy of Congress, in order to promote the general welfare, that the Nation's abundance of food should be utilized * * * to safeguard the health and well-being of the Nation's population and raise levels of nutrition among low-income households. The Congress hereby finds that the limited food purchasing power of low-income households contributes to hunger and malnutrition among members of such households. The Congress further finds that increased utilization of food in establishing and maintaining adequate national levels of nutrition will promote the distribution in a beneficial manner of our agricultural abundances and will strengthen our agricultural economy, as well as result in a more orderly marketing and distribution of food. * * *

Food Stamp Act of 1964 § 2, 7 U.S.C. § 2011 (1970). Stated simply, the Congressional purpose appears to be twofold; to promote adequate nutritional levels among low income households and to stimulate the agricultural economy by encouraging purchasing of agricultural surpluses. This Court must view with disfavor any regulations which do not promote this goal.

Under the Act both Federal and State agencies are given the responsibility of developing standards designed to limit participation to these households whose income is a "substantial limiting factor in the attainment of a nutritionally adequate diet". S.Rep. No. 1124. 2 U.S. Code Cong. & Admin.News, p. 3275 (1964). It was contemplated that families would be certified to participation on the basis of their individual financial need, established as a general economic criteria. H.R.Rep. No. 10222, Explanation of the Department of Agriculture. 2 U.S.Code Cong. & Admin.News, p. 3284 (1964). Within the limits of these parameters the Court must determine whether the regulations in question are consistent with the act itself.

■ Viewed in this perspective it is difficult to see how the challenged regulations can effectuate the Congressional goals. By denying recipients of a travel allowance a deduction from "Monthly Net Income" for such allowances, the Department of Social Services,

and the Department of Agriculture, in effect, encourage the continuance of the very situation the food stamp program was designed to alleviate. Under this record the travel allowance is spent entirely to defray commuting expenses. Therefore, receipt of such allowance has no effect on food purchasing power. Yet under the current regulatory formula for computing the cost of food stamp participation, the travel allowance operates to increase the amount an effected household must pay to purchase a given quantity of food. This is amply illustrated by the case of the named plaintiff. Without her $44 monthly travel allowance Mrs. Hein would have to pay $46 each month to obtain food stamps with a purchasing power of $94. (Plaintiff's Exhibit 1.) With her travel allowance as presently treated she has to pay $58 each month for the same $94 worth of stamps.

The Act, in delegating administration provides:

(a) The Secretary is authorized to formulate and administer a food stamp program under which, * * * eligible households within the state shall be provided with an opportunity to obtain a nutritionally adequate diet through the issuance to them of a coupon allotment which shall have a greater monetary value than the charge to be paid for such allotment by eligible households.

(c) The Secretary shall issue such regulations, not inconsistent with this chapter, as he deems necessary or appropriate for the effective and efficient administration of the food stamp program.

7 U.S.C. § 2013(a), (c) (1970). Regulations promulgated by the Secretary under this statutory grant are found at 7 C.F.R. § 271.3(c)(1). Regulations that include plaintiff's transportation allowance as income § 271.3(c)(1)(i) (f and g) and disallow it or actual transportation costs as an expense, § 271.3 (c)(1)(iii)(d and f) do not further the

purposes of the act and are inconsistent with its purposes.

Further support for this conclusion is found in § 2014(c) which provides a special exemption to the exclusion of persons eligible to participate in the benefits of the Act. This exception includes bona fide students in any accredited school or training program. The logical construction of this provision is that Congress intended to provide consideration for those who participate in educational programs in an attempt to enhance their earning capacity. This goal cannot be properly furthered if allowances such as the one in question here are used to actually decrease the food purchasing power of participants.

The literal import of the Act, as supported by what legislative history there is, indicates that Congress sought to encourage food stamp recipients to secure education and training. Commuting expenses certainly reduce the level of actually available income. Reimbursement, while partially restoring that level does not increase an individual's purchasing power. See *Shea v. Vialpando* (1974), 416 U.S. 251, 258–61, 94 S.Ct. 1746, 14 L.Ed.2d 120.

For the above described reasons the Court is of the conviction that disallowance of the plaintiff's transportation allowance as a deduction, is a regulatory interpretation inconsistent with both the remedial purposes of the act and with the Congressional purpose underlying it. Thus, Item d and 7 C.F.R. § 271.3 (c)(i)(iii)(f) cannot be sustained.

## IV. Equal Protection

In addition to the inconsistency mentioned above, plaintiff has further alleged that Iowa State Department of Social Services Manual VII–3–16(d), and 7 C.F.R. §§ 271.3(c)(i)(iii)(d) and (f) violate her rights to equal protection under the Fourteenth Amendment to the United States Constitution by not allowing a deduction for transportation. This is an arbitrary distinction

between those food stamp recipients who receive such travel allowances and those who do not, even though both classes are similarly situated in terms of disposable income and purchasing power. It is further alleged that this distinction is arbitrary because it isolates for treatment the educational cost of commuting from other educational costs for which recipients are allowed corresponding deductions.

The Court will first note that plaintiff and the class she represents are a definable group created by legislative distinction. Food stamp recipients who are receiving a transporation allowance constitute one class, those not receiving such an allowance the other. Included within this second class are those food stamp recipients who, although receiving a babysitting allowance, are allowed a deduction for it from their monthly net income.

Regulatory distinctions must be based on differences that are reasonably related to the purposes of the Act in which those differences are found. *Morey v. Doud* (1957), 354 U.S. 457, 465, 77 S.Ct. 1344, 1 L.Ed.2d 1485; *Dandridge v. Williams* (1970), 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491; *Rinaldi v. Yeager* (1966), 384 U.S. 305, 309, 86 S.Ct. 1497, 16 L.Ed.2d 577. The purposes specifically designated by Congress in enacting the Food Stamp Act were to alleviate hunger and malnutrition and to improve the agricultural economy. A classification, and subsequent disparate treatment of that class which acts directly to reduce their food purchasing power bears no relationship to the purposes of the Act. The challenged classification is clearly irrelevant to the stated purpose of the Act. The travel allowance in question, being necessarily utilized entirely to defray commuting expenses clearly bears no relationship to the recipient's ability to provide herself and her family with an adequate nutritional level, nor to stimulate the agricultural economy. See *U.S. Department of Agriculture v. Moreno*

*supra,* at 534, 93 S.Ct. 2821, 37 L.Ed.2d 782.

In order to test compliance with both Fifth and Fourteenth Amendment Equal Protection principles this Court must use the "traditional" equal protection analysis. *U.S. Dept. of Agriculture v. Moreno, supra; U. S. Dept. of Agriculture v. Murry* (1973), 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767. Traditional equal protection analysis requires that equally situated individuals be treated differently only when the classification is reasonable, not arbitrary, and related to a legitimate government objective. *San Antonio Independent School Disrict v. Rodriguez* (1973), 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16; *Eisenstadt v. Baird* (1972), 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349. This test of "minimal" rationality has been held by the Supreme Court to be the appropriate standard to apply to questions involving welfare benefits. *Weinberger v. Salfi* (1975), 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522; *Jefferson v. Hackney* (1971), 406 U.S. 535, 92 S.Ct, 1724, 32 L.Ed.2d 285; *Dandridge v. Williams, supra,* at 485, 90 S.Ct. 1153. The test of minimal rationality requires only that some legitimate governmental objective appear.

Thus, if it is to be sustained, the challenged classification must rationally further some legitimate governmental interest other than those specifically stated in the Act itself. See *United States Department of Agriculture v. Moreno, supra,* at 534, 93 S.Ct. 2821. The defendants have not presented, nor has this Court been able to ascertain any legitimate governmental interest in drawing the distinction between the classes represented here.

The requirement of Equal Protection denies government "the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of a criteria wholly unrelated to the objective of that statute". *Reed v. Reed* (1971), 404 U.S. 71, 75–76, 92 S.Ct. 251, 254, 30 L.

Ed.2d 225. Traditionally, where the classification drawn relates not to a goal of the Act itself but to some other reasonable governmental purpose, legislation has been sustained. But as was noted above, there is no such purpose here. There is no contention that it is necessary for the preservation of funds, nor that it is designed to prevent systematic abuses. There appears to be no reasonable interest in the challenged classification.

The legitimate governmental interest would seem to be one of ensuring that the two Acts work in harmony, not that utilization of one penalize use of the other. See *U.S. Dept. of Agriculture v. Moreno, supra.* As the Court noted in *Dandridge v. Williams, supra,* at 485, 90 S.Ct. at 1161: "In the areas of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect". Mathematical nicety or complete equality are not required. *Lindsley v. Natural Carbonic Gas Co.* (1911), 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369. Yet when no state of facts will justify the classification it cannot be sustained.

The challenged classification here, being inconsistent with the purposes of the Act, and creating an arbitrary class of welfare recipients is such a regulation. It operates to effect a class in contravention of basic principles of equal protection of the laws and therefore cannot withstand scrutiny.

### V. Due Process

Plaintiff has further alleged that denying her a deduction for funds received as a transportation allowance contravenes the due process clause of the Fifth and Fourteenth Amendments. Plaintiff has alleged that by denying this particular deduction the regulations establish a conclusive presumption that her food purchasing power is in fact greater and her need less which, it is said is a presumption contrary to fact.

As was previously noted, the purpose of the Food Stamp Act was to stimulate the agricultural economy and provide supplemental assistance to families with nutritionally inadequate diets. By disallowing the plaintiff's deduction for the travel allowance the Secretary has created a conclusive presumption that receipt of this travel allowance actually is a factor which decreases plaintiff's need, or qualification for the Food Stamp assistance. In fact, since the amount of the travel allowance must, and is, spent entirely to defray the costs of commuting, this presumption is contrary to fact.

The United States Supreme Court has shown increasing skepticism toward legislation by presumption because such legislation might permanently deprive citizens of important rights which more carefully drawn statutes would afford. See *United States Dept. of Agriculture v. Moreno, supra; United States Dept. of Agriculture v. Murry, supra; Vlandis v. Kline* (1973), 412 U.S. 441, 93 S. Ct. 2230, 37 L.Ed.2d 63; *Stanley v. Illinois* (1972), 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551; *Bell v. Burson* (1971), 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90. In the instant case for example, item (d) and 7 C.F.R. § 271.3 (c)(1)(iii)(f) provide no safeguards for individual consideration of what effect the travel allowance actually has on an individual's ability to purchase a nutritionally adequate diet. By specific regulation this presumption is conclusively established. The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. *Stanley v. Illinois,* supra, at 655, 92 S.Ct. 1208. As the Court said in Stanley: "The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency." *Id.* at 656, 92 S.Ct. at 1215.

The Court concludes that disallowance of the deduction, with no provision being made for the determination of the effect of the receipt of the travel allowance in light of the goals, purposes and procedures of the Act creates a conclusive presumption which is contrary to fact. This regulation thus lacks the critical requisites of due process required by the Fifth and Fourteenth Amendments to the United States Constitution.

Defendants cite *Check v. Butz* (N.D. Cal., filed June 4, 1975) involving the same regulations, which when applied to plaintiff forced her to pay an additional $15 per month for food stamps. The Court held that the evidence was so inconclusive that it was impossible for the Court to find the application to plaintiff frustrated the policies of the act. We are not confronted with such an inconclusive record. It has been stipulated that the transportation allowance was spent for the cost of transportation. Even if the case is interpreted to be contrary to the result reached here, we would not be inclined to follow it.

*McInnis v. Weinberger* (D.C.Mass., 1975), 388 F.Supp. 381 and *Irizarry v. Weinberger* (S.D.N.Y., 1974), 381 F. Supp. 1146, involved the problems created by the differing effect of the regulations in "cash-out" states and "non cash-out" states and are not factually applicable.

*Patrick v. Tennessee Department of Public Welfare* (E.D.Tenn., 1974), 386 F.Supp. 944, raised equal protection objections to the inclusion of rent subsidy payments in calculating net income for food stamp purposes and the failure to include benefits under the low-income housing programs. The Court held that it was difficult if not impossible to calculate a monetary value for low rent housing benefits and that the classification was rationally related to a legitimate government interest. As previously pointed out, the record here is clear that the entire travel allowance is spent for travel expense.

This Court is therefore of the opinion that the challenged regulations in light of the reasons set out cannot be sustained. Consequently it will be ordered that defendants, their successors in office, their agents and employees and all other persons in active concert and participation with them should be permanently enjoined from including in the monthly net income of any person receiving same, any amount received by such person as reimbursement for necessary commuting expenses, pursuant to an Individual Education and Training Plan, unless such amount is deducted from such person's monthly net income in determining such person's adjusted net income. We conclude further that defendants should promptly recompute the adjusted net income for each person who is presently participating in food stamp program and who has been paying a wrongfully high price for his food stamp allotment because his adjusted net income has been improperly computed for the reasons set forth above, and make a forward adjustment of the price of future stamps by reducing the price of food stamp coupons in future months by whatever amount necessary for as many months as necessary so as to fully compensate the recipient financially for food stamps wrongfully denied in the past. *Stewart v. Butz* (W.D. Ky., 1973), 356 F.Supp. 1345, 1354; *Bermudez v. U.S. Department of Agriculture* (D.D.C., 1972), 348 F.Supp. 1279, 1281; *Tindall v. Hardin* (W.D.Pa., 1972), 337 F.Supp. 563, 566–67.

Consistent with this holding plaintiff's Motion for Summary Judgment is granted. Defendant's Motion for Summary Judgment is denied.