**Edwin James ORTIZ et al., Plaintiffs,**

v.

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT et al., Defendants.**

**Civ. No. 75–1188.**

United States District Court, D. Puerto Rico.

Dec. 7, 1977.

Maria Dolores Fernós, P. R. Legal Services, Inc., Hato Rey, P. R., for plaintiffs.

Eduardo R. Estrella, Asst. U. S. Atty., San Juan, P. R., for Federal defendants.

Guillermo A. Nigaglioni, Hato Rey, P. R., for defendant Interstate General Corp.

## OPINION AND ORDER

PESQUERA, District Judge.

The present action seeks declaratory and injunctive relief and a writ of mandamus. Jurisdiction is claimed under 28 U.S.C. § 1331. The instant case raises important questions as to the interaction between the National Housing Act, 12 U.S.C. § 1701 et seq. and the Veterans Educational Benefits Act, 38 U.S.C. § 1681 et seq.

Plaintiff Milton Burgos[1] receives benefits under 38 U.S.C. § 1681 et seq. He is a resident of Parque de los Monacillos, a low-rent housing project located at Guaynabo, Puerto Rico, and operated by codefendant Interstate General Corporation. Said project was built with and still receives assistance by the Department of Housing and Urban Development's (HUD) funds under 12 U.S.C. § 1701 et seq. Codefendants Rogelio Pérez and Gloria Flaqué Vergé are officials of Interstate General Corporation.

The construction of Parque de los Monacillos was financed with a mortgage insured pursuant to Section 221(d)(3) of the National Housing Act, 12 U.S.C. § 1715*l*(d)(3). Since this section allows liberal financing and relatively low debt servicing requirements, rents are lo\ · than they would

---

1. Edwin James Ortiz, originally a coplaintiff herein, moved from Parque de los Monacillos, a "covered housing project" according to the Stipulation of January 17, 1976. Accordingly, he is no longer a party hereto.

normally be in similar projects. HUD also effects an additional subsidy payment to the mortgagor of the project for the benefit of eligible tenants pursuant to a separate program known as the Rent Supplement Program,[2] 12 U.S.C. § 1701s which has the effect of further reducing rent payments so that in most cases they do not exceed 25% of the tenant's *adjusted gross income.*

On September 5, 1975, codefendant Gloria Flaqué Vergé, Manager of the Parque de los Monacillos Housing Project informed the tenants thereof, including plaintiff that annual recertifications of income were to begin soon. She further informed plaintiff that educational benefits from the Veterans Administration were to be included as "income" for purposes of computing rents. This fact was confirmed by Mr. José Carballeira, HUD occupancy specialist, who verbally explained to plaintiff that HUD regulations so required.

On September 23, 1975, plaintiff received a letter from Jesús Reyes Bascarán, Director of HUD's Housing Management Division, stating that HUD regulations were to be interpreted as considering "income" as "income from all sources", thereby ruling that Veterans Administration educational benefits fell into such category and were to be considered as "income" for the purpose of determining rental payments. Plaintiff Edwin James Ortiz proceeded to pay his usual rent, refusing to pay for the new required rental amount, which included in its computation plaintiff's veterans educational benefits as "income".

Pursuant to a Stipulation filed on January 7, 1976, plaintiff's factual allegations were accepted as true by all defendants herein.

Through its answer to the complaint and subsequent motions submitted hitherto, codefendant HUD established that its official policy had been misinterpreted by the HUD occupancy specialist, Mr. Carballeira as well as by Mr. Reyes Bascarán. Thereafter, plaintiff filed a motion for partial summary

judgment requesting that the Court dispose of one of the two main issues of the instant action, i. e., whether pursuant to the provisions of 12 U.S.C. § 1701 et seq. codefendant HUD could consider all of plaintiff's Veterans Administration educational benefits as "income". A motion to dismiss or for summary judgment was subsequently filed by the federal codefendants wherein they challenged this Court's jurisdiction on various grounds and further alleged plaintiff's failure to state a claim upon which relief could be granted. The issues brought forth by these motions, including the matters related to class-certification, will be addressed forthwith.

I

■ At the outset, we must ascertain whether we have jurisdiction to entertain the present action. We initially address the issue of whether through a retrospective application of the amendment made to 28 U.S.C. § 1331 by P.L. 94–574, 90 Stat. 2721 (October 21, 1976) Section 2, we may acquire jurisdiction irrespective of the amount in controversy previously required by said statute. The aforecited amendment eliminated the jurisdictional amount requirement in cases "aris[ing] under the Constitution, laws or treaties of the United States". The instant case was filed before its enactment; thus, the possible retrospective application of P.L. 94–574 is an issue of first impression before this Court.

Plaintiff correctly alleges that the present action is one arising under the laws of the limited States; more questionably, he also claims that his cause is for damages in excess of $10,000, exclusive of interest and costs. He claims damages amounting to $20,000. Although the damages allegedly suffered are not specified in the complaint, we need not go into the sufficiency of the jurisdictional amount. We explain ourselves.

---

**2.** Neither Section 221(d)(3) nor the rent supplement program should be confused with the conventional low-rent public housing program and the Section 8 "Lower Income Housing Assistance Payments Program" administered by HUD pursuant to the Housing Act of 1937, 42 U.S.C. § 1430 et seq.

The aforementioned amendment to the federal-question statute had the effect of extending jurisdiction to actions such as plaintiff's where the essential purpose of the same could be to obtain non-statutory review of administrative actions and where damages may have been worth less than $10,000 or the right affected could not be valued. H.R.Rep. No. 1656, 94th Cong., 2d Sess. 16, reprinted in [1976] U.S.Code Cong. & Admin.News pp. 6121, 6136. The case at bar certainly seems to be one of that kind. However, the record does not reveal that plaintiff ever paid the increased rent; even presuming he had, we find it highly improbable that the difference would amount to more than $10,000. Nor does the record show that plaintiff was evicted or harassed in any particular way for refusing to pay the increased rent.

The instant action was commenced prior to October 21, 1976, date of approval of P.L. 94–574. Notwithstanding any jurisdictional infirmities that may have existed at such time, we now find that we have federal question jurisdiction over this case.

The text and legislative history of P.L. 94–574 nowhere indicate that Congress intended the amendment to have a limited prospective application. Unless a contrary intent appears, changes in statutory jurisdiction apply to pending actions. *Link v. Receivers of Seaboard Air Line Ry. Co.*, 73 F.2d 149, 151 (4 Cir., 1934). Such intent must appear from the text of the law or in its legislative history. The last amendment to Section 1331 enacted prior to P.L. 94–574 expressly provided:

"This Act shall apply only in the case of actions commenced after the date of the enactment of this Act." (P.L. 85–554, § 1; 72 Stat. 415, July 25, 1958)

Thus, the clear intent required is present therein. In the case at bar, we must apply the long-standing general rule. Said maxim holds that procedural statutes apply to pending litigation. *Untersinger v. U. S.*, 181 F.2d 953 (2 Cir. 1950); *Koger v. Ball*, 4 Cir. 1974, 497 F.2d 702; *U. S. v. Haughton*, 413 F.2d 736. As the Supreme Court held in applying 28 U.S.C. § 1404(a) to pending actions:

"No one has a vested right in any given mode of procedure." *Ex parte Collett*, 337 U.S. 55, 71, 69 S.Ct. 944, 953, 93 L.Ed. 1207 (1948)

This has been held to be particularly true regarding statutory changes affecting jurisdiction. *Bruner v. United States*, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786; *United States v. Alabama*, 362 U.S. 602, 80 S.Ct. 924, 4 L.Ed.2d 982; *Hanson v. Chesapeake and Ohio Railroad Company*, 291 F.Supp. 401 (SDW Va.1968), vacated on other grounds, 412 F.2d 631 (4 Cir., 1969).

This rule applies where jurisdiction has been restricted by Congress, *Bruner, supra; Hallowell v. Commons*, 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409; *Hanson v. Chesapeake, supra*, as well as where jurisdiction has been expanded. *U. S. v. Alabama, supra; Bunch v. United States*, 9 Cir., 548 F.2d 336; *Hagedorn v. Union Carbide Corporation*, D.C., 363 F.Supp. 1061.

Finally, the general intent and legislative purpose behind P.L. 94–574 support its retroactive application. This Act as a whole had a broadly generous objective: to eliminate what had come to be regarded as merely technical restrictions on a given plaintiff's right to seek judicial review of official action. Apart from amending 28 U.S.C. § 1331 to eliminate the jurisdictional amount, P.L. 94–574 also waived the defense of sovereign immunity in actions seeking relief other than money damages, and further eliminated certain technical requirements regarding the naming of government parties as defendants. See P.L. 94–574, Sections 1, 3. In eliminating the jurisdictional amount requirement in such cases, Congress expressly proposed to close "an unfortunate gap in the statutory jurisdiction of the federal courts". *Wolff v. Selective Service Local Board No. 16*, 372 F.2d 817, 826 (2 Cir., 1967) cited in H.R.Rep. No. 94–1656, *supra*. As stated more recently,

"Congress obviously has expressly acted to fill the jurisdictional void created by the pre-existing amount-in-controversy requirement." *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

In light of the aforestated, we find it unnecessary to discuss the rest of plaintiff's jurisdictional allegations. Suffice it to point out that the U. S. Supreme Court has clearly established that Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702 is not an independent grant of jurisdiction. *Califano v. Sanders, supra.*

## II

■ Plaintiff requests class certification, alleging that the instant action is on behalf of himself and "all veterans receiving educational benefits from the Veterans Administration and who live in housing projects developed under Section 221(d)(3) of the National Housing Act and who receive rent supplement payments under 12 U.S.C. 1701(s) [1701s]".

Such request must be denied. The class purportedly represented by plaintiff is so large as to be unwieldy. There are tens of thousands of units of Section 221(d)(3) subsidized housing in the fifty states, Puerto Rico, Guam, the Virgin Islands and American Samoa. When the class is so unmanageable, certification must be denied. *Reinisch v. N.Y.S.E.,* D.C., 52 F.R.D. 561; *Matthies v. Seymour Mfg. Co.,* 3 Cir., 270 F.2d 365; *Giordano v. Radio Corp. of America,* 3 Cir., 183 F.2d 558; see Rule 23(a) Federal Rules of Civil Procedure.

## III

We now consider the principal arguments advanced in the aforementioned motions regarding the merits of this case.

Plaintiff claims that the general objectives of the Veterans Administration Educational Benefits Act preclude the computation of benefits received under said Act as "income" or "adjusted gross income" for purposes of determination of rent to be paid by housing project residents under 12 U.S.C. § 1701s. According to plaintiff, benefits under 38 U.S.C. § 1681 et seq. are to be used *exclusively* for educational purposes

and *not* for living expenses. He also claims that inclusion of benefit payments as income creates an irrebuttable presumption that such payments are available for rental expenses. Such a conclusive presumption, according to plaintiff, violates his due process rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, and further preclude beneficiaries from employing the full moneys afforded by the Veterans Administration for educational purposes, in violation of the Act's intention.

Defendants contend that HUD policy has been to exclude from calculations of income the amounts *actually paid* for educational expenses, since that portion of the benefit payment not spent for such expenses amounts to disposable income which can be used for rent payment. In support of this contention, codefendant HUD filed an affidavit by Fred W. Pfaender, Director of the Office of Loan Management of HUD. Policy related to the issue at bar, as Pfaender admits, was not explicit at the time of the filing of the affidavit.[3] See 12 U.S.C. § 1701s; 24 CFR 215.1 et seq.; HUD Handbook, 4520.1. Accordingly, the provisions related to the determination of eligibility for rent supplement assistance, and the determinations of the maximum payments for eligible tenants provide no specific instructions concerning the manner in which educational benefits received from the Veterans Administration should be treated in computing "income". See Pfaender's affidavit, p. 2; 24 CFR 215.20(b), 215.25 and 215.45; HUD Handbook 4520.1, paragraphs 3–2c and 3–6.

Defendants contend, however, that under applicable regulations and the HUD Handbook, "the general policy shall be to exclude from income all specific purpose payments intended to defray specific expenses of an unusual nature and which are expended solely for those expenses". (underscoring ours, Pfaender's affidavit, p. 2).

---

**3.** Nevertheless, according to Pfaender, the regulations and handbook do state the general policy that, while "income" is defined as to include all money received from any source, special purpose payments intended to defray specific expenses of an unusual nature and which are expended solely for such purposes should not be considered as income. (Pfaender's affidavit, p. 2)

■ We agree with such interpretation. The Veterans Administration Educational Benefits Act does not preclude the inclusion as "income" of that portion of benefits which is not used for educational purposes. Its pertinent part provides:

"§ 1681. *Educational assistance allowance—General*

(a) The Administrator shall, . . . pay to each eligible veteran who is pursuing a program of education under this chapter an educational assistance allowance to meet, in part, *the expenses of [his] subsistence*, tuition, fees, supplies, books, equipment, and other educational costs." (emphasis supplied) 38 U.S.C. § 1681(a).

The plain meaning of the aforecited section clearly indicates that the benefits are partly intended for non-educational expenses. The House Report on the Bill implicitly confirms this literal reading:

"The Committee emphasizes that, as in the case of the Veterans' Readjustment Assistance Act of 1952 (for Korean conflict veterans), it is not the intention of this legislation to establish a program which completely subsidizes the cost of a veteran's education program, *as well as his living costs.* This legislation is designed as an aid program and it is expected that in many cases the veteran will be required to make a contribution to the cost of his own education program." H.R.Rep. No. 1258, Feb. 3, 1966 [to accompany H.R. 12410], U.S.Cong. & Admin.News, 89th Cong., 2d Sess. (1966), p. 1890. (emphasis supplied)

Benefits under this Act are thus designed to partly assist recipients in covering both educational and living expenses. Were it otherwise, there would be no increased benefits for recipients with a larger number of dependents. See 38 U.S.C. § 1632(d).

According to HUD regulations, "income" shall mean:

". . . the total gross income before taxes and other deductions, received by all members of the tenant's household. In determining gross income, there shall be included all wages, social security payments, retirement benefits, military and veteran's disability payments, unemployment benefits, welfare benefits, interest and dividend payments, and such other income items as the Secretary considers appropriate." 24 CFR 215.20(b).

The only deductions provided are:

"$300 . . . for each minor person who is a member of the immediate family of the tenant and residing with the tenant and any earnings of such minor shall not be included in computing the tenant's income." 24 CFR 215.45(b)(1)

and furthermore

"The Commissioner may allow special deductions to take into account expenses incurred as a result as a result (sic) of physical disability or continuing illness, the cost of necessary child care while a wage earner of the household is at work and such other deductions as the Secretary considers appropriate." 24 CFR 215.45(b)(2).

Plaintiff has failed to establish that the law intended to differentiate between rental and other living expenses. There is, accordingly, no reason in law to preclude the inclusion of benefits, which are available for rental purposes, as "income" in rent computation. Of course, we have no way of ascertaining whether benefits received pursuant to 38 U.S.C. § 1681 et seq. are *in fact* available for rental payments. We do not have at hand the relevant statistical information related thereto; however, we reasonably infer that, given the intent of 38 U.S.C. § 1681 et seq., recipients in many instances defray part of the benefits obtained thereunder for educational purposes, expending the remainder for other purposes, including rent payments. Such split expenditure is a matter for administrative determination, subject to intraagency appeal and judicial review as provided by law. Suffice it for present purposes to assume that, as alleged herein, a particular plaintiff may expend the totality of the benefits in educational endeavours. In such a case, said amount would have to be totally deducted from the computation of "income".

Plaintiff, insisting that the actual source on which the benefits are defrayed is irrele-

vant, seeks support in precedents related to the Work-Study Program, Individual Education and Training Plan and the Old Age or Disability Insurance Program (OASDI) under the Social Security Act. *Brown v. Bates*, 363 F.Supp. 897 (N.D.Ohio, 1973); *Hein v. Burns*, 371 F.Supp. 1091 (S.D.Iowa, 1974), 402 F.Supp. 398 (1975); *Elam v. Hanson*, 384 F.Supp. 549 (N.D.Ohio, 1974). We are unconvinced. All these cases concerned benefits established by legislation which specifically destined the same for one or more exclusive purposes; as a result, said benefits could not be computed as available income for other purposes.

*Hein v. Burns, supra,* concerned allowances specifically granted to cover travelling expenses for commuting to school. The Court interpreted these to be exclusively educational expenses and thus outside the definition of income provided by the Food Stamp regulations. In *Elam v. Hanson, supra,* payments were also intended to cover educational expenses of family children and were not available for support thereof. Such payments were thus rightly excluded from the computation of income available for the children's support, which was the relevant basis for determining the level of state Aid to Families with Dependent Children (AFDC). And in *Brown v. Bates, supra,* the Court found that work-study payments were designed to cover only the student's educational expenses and not for current living costs. Such payments constituted "grants" to be excluded from computation of income for the purpose of various categorical public assistance programs.

■ However, defendant Jesús Reyes Bascarán, Director of the Housing Management Division of the HUD Regional Office in Puerto Rico did improperly include the totality of plaintiff's benefits under 38 U.S.C. § 1681 et seq. as "income" under 24 CFR 215 and Chapter 3 of the HUD "Rent Supplement Handbook". In doing so, defendant Reyes failed to follow an already operative HUD policy, which called for exclusion of the educational portion of veteran's benefits under 12 U.S.C. § 1701 et seq. from the final computation of income. Although Mr. Reyes was purportedly interpreting HUD regulations, he was in fact passing judgment on an area where HUD had already elucidated clear policy directives (see affidavit of Fred W. Pfaender). Codefendant Reyes' duty was, consequently, not discretionary, since he was not merely interpreting, but implementing legislation already interpreted. See *Workman v. Mitchell,* 502 F.2d 1201 (9 Cir., 1974).

### Remedies

■ Insofar as we ascertain from the record of the instant case that defendants' actions were effected in their sincere appreciation and interpretation of applicable regulations, and that they acted in good faith, we deny the concession of any damages sought against the same. Moreover, federal officials are immune from damage liability in cases such as the present one. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). We will thus not need to expound on the personal involvement or participation of each codefendant.

WHEREFORE, in view of the foregoing, it is hereby ORDERED

that plaintiff's motion for summary judgment and defendants' motion for summary judgment be, and they are both hereby granted in part and denied in part as follows:

We hereby DECLARE that defendants improperly charged plaintiff an increased rent based on the *totality* of plaintiff's benefits under 38 U.S.C. § 1681 and we further

DECLARE that benefits received under the aforecited sections and which are actually defrayed on educational matters are to be deducted from the computation of "income" for rental purposes under 12 U.S.C. § 1701 et seq. and we further

DECLARE that the portion of plaintiff's benefits which is *not* used for educational expenses is "income" under 24 CFR 251.-20(b) and HUD Handbook 4520.1 paragraphs 3–2c and 3–6, and it is further

ORDERED that defendants Raymond Watson, Jesús Reyes Bascarán, Gloria Flaqué Vergé, Rogelio Pérez and Interstate General Corporation, their agents, employ-

ees, attorneys, successors pursuant to Rule 25(d), Federal Rules of Civil Procedure and all other persons acting in concert therewith be and are hereby permanently enjoined and restrained from considering or computing as "income" that portion or were it the case, the totality of plaintiff's benefits under 38 U.S.C. § 1681 et seq. which are actually defrayed exclusively for educational purposes.

Judgment shall be entered accordingly.