Janet TURCHIN, for herself and on behalf of all others similarly situated, Plaintiffs,

v.

Earl BUTZ, Individually, and in his capacity as Secretary of Agriculture, et al., Defendants.

No. 4–74 Civ. 622.

United States District Court, D. Minnesota, Fourth Division.

Jan. 5, 1976.

Eric S. Janus, Legal Aid Society of Minneapolis, Inc., Minneapolis, Minn., for plaintiff.

Robert G. Renner, U. S. Atty. by Donald F. Paar, Asst. U. S. Atty., Minneapolis, Minn., for defendants Earl Butz, Richard Feltner, and P. Royal Shipp.

Warren Spannaus, Atty. Gen. of Minn. by Michael R. Saeger, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendants Vera Likins and Curtis Johnson.

Robert W. Johnson, Anoka County Atty. by Edwin Wistrand, Asst. County Atty., Anoka, Minn., for defendant John Elfelt.

## MEMORANDUM AND ORDER

ALSOP, District Judge.

Plaintiff has initiated this action against the defendants seeking declaratory and injunctive relief for herself and on behalf of a class she seeks to represent. Jurisdiction is alleged to exist as to defendants Butz, Feltner, and Shipp, pursuant to 28 U.S.C. § 1337 and as to the remaining defendants pursuant to 28 U.S.C. § 1343(3).

The matter is presently before the court upon various motions of the parties. The plaintiff has moved for class certification and summary judgment. Defendants Butz, Feltner, and Shipp have moved the court to dismiss the complaint on the grounds that the court lacks personal and subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted and, in the alternative, have moved the court for summary judgment. Defendants Likins, Johnson, and Elfelt have moved for an order dismissing the complaint against them for failure to state a claim upon which relief can be granted. The parties have entered into a stipulation of facts.

Plaintiff and her minor children live in Anoka County and are recipients of Aid to Families with Dependent Children (AFDC). In March of 1974, plaintiff began receiving an additional $40.00 per month from Anoka County in the form of a non-WIN training allowance. The purpose of the training allowance is to provide funds for the incidental expenses (such as transportation and books) of pursuing a course of study at Anoka Ramsey Community College. Plaintiff qualifies for the allowance in accordance with the 1972 Policy Bulletin # 51 of

the Minnesota Department of Public Welfare because she is participating in 30 hours or more per week of training. The non-WIN training allowance is available to the plaintiff as a part of Minnesota's Social Service Program established pursuant to Title IV–A of the Social Security Act, 42 U.S.C. § 601 *et seq.* (Title IV–A of the Social Security Act).

Pursuant to the applicable federal regulations promulgated by the Department of Agriculture, the Anoka County Welfare Department includes plaintiff's entire non-WIN training allowance as income for purposes of computing the food stamp allowance for her household.[1] Further, in accordance with the same regulations, plaintiff is not allowed to deduct her actual expenses incurred while pursuing her course of study,[2] but can deduct ten per cent of the income received from the training allowance.[3]

The net result of these regulations is that plaintiff's cost for purchasing $178.00 worth of food stamps has increased from $96.00 to $114.00. The parties have stipulated that plaintiff's transportation expenses incurred while pursuing her course of study amount to approximately $43.00 per month and that plaintiff has additional expenses for books.

### Claims for Relief

Plaintiff alleges that the regulations, by including her training allowance in income and not allowing a deduction for actual expenses, deny her the benefit of the Food Stamp Act of 1964, *as amended* 7 U.S.C. § 2011 *et seq.* (Food Stamp Act) and conflict with the purpose of that Act. Further, plaintiff alleges that the regulations violate the due process clauses of the Fifth and Fourteenth Amendments by creating an irrebuttable presumption that recipients of the training allowance have added resources available with which to purchase food.

The first claim seeks to have the disputed regulations declared invalid as being inconsistent with the Food Stamp Act as legislated by Congress; the second seeks a declaration that the regulations are unconstitutional. If the court does not rule favorably on the alleged inconsistency, plaintiff's complaint requests that a three-judge district court be convened to hear and determine the constitutional claim presented by plaintiff.

■ The Supreme Court, in the case of *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), set forth the procedure to be followed by a single-judge district court when faced with both a statutory claim and a claim of a constitutional nature. The single-judge district court, after assuming jurisdiction, should first hear the merits of the statutory claim and should not convene a three-judge district court to hear the constitutional claim if the former is dispositive. It is not necessary for the single-judge court to automatically defer to the three-judge court for the initial determinations of jurisdiction and a decision on the merits of the statutory claim. *Id.* at 543–45, 94 S.Ct. 1372.

### Jurisdiction and Failure to State a Claim

■ Jurisdiction over defendants Butz, Feltner, and Shipp is alleged to exist pursuant to 28 U.S.C. § 1337, which reads in relevant part as follows:

> The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce

The defendants argue that the Food Stamp Act, although indirectly related to commerce, has as its purpose to promote the general welfare. Such a purpose, defendants contend, can only flow from the general welfare clause of the Constitution, art. I, § 8, cl. 1, and not from the commerce clause found at clause 3 of that same article and section.

---

**1.** 7 C.F.R. § 271.3(c)(1)(i)(f and g).

**2.** 7 C.F.R. § 271.3(c)(1)(iii)(f).

**3.** 7 C.F.R. § 271.3(c)(1)(iii)(a). In the instant case, this deduction amounts to ten per cent of $40.00 or a total of four dollars.

The plaintiff argues that jurisdiction is properly based in § 1337. In support of that position, plaintiff refers the court to the Congressional purpose of the Food Stamp Act set forth in § 2 of the Act, 7 U.S.C. § 2011.

It is hereby declared to be the policy of Congress, in order to promote the general welfare, that the Nation's abundance of food should be utilized . . . to safeguard the health and well-being of the Nation's population and raise levels of nutrition among low-income households. The Congress hereby finds that the limited food purchasing power of low-income households contributes to hunger and malnutrition among members of such households. The Congress further finds that increased utilization of food in establishing and maintaining adequate national levels of nutrition will promote the distribution in a beneficial manner of our agriculture abundances and will strengthen our agriculture economy, as well as result in more orderly marketing and distribution of food. . . .

In *Moreno v. United States Department of Agriculture,* 345 F.Supp. 310 (D.D.C.1972) (three-judge court), *aff'd,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), the plaintiffs claimed that certain regulations promulgated under the Food Stamp Act, as well as a portion of the Act itself, were invalid. The court ruled that jurisdiction existed pursuant to 28 U.S.C. § 1337 because the Food Stamp Act was an "Act of Congress regulating commerce. . . ." The court held that it was not necessary, for jurisdictional purposes under § 1337, that the sole source of authority for enacting the legislation came from the commerce clause as long as that source of power was significant. *Id.* at 313. Other federal courts have adopted that rationale. *E. g., Lidie v. California,* 478 F.2d 552, 554 (9th Cir. 1973); *Bennett v. Butz,* 386 F.Supp. 1059, 1063 (D.Minn. 1974). Based upon these decisions and the briefs and arguments presented in this matter, the court is of the opinion

that it has original jurisdiction to hear plaintiff's cause against defendants Butz, Feltner, and Shipp, pursuant to § 1337.

 All of the defendants have moved the court for an order dismissing this action based upon the grounds that the complaint fails to state a claim upon which relief can be granted. Defendants Butz, Feltner, and Shipp argue that this suit is barred by sovereign immunity; the remaining defendants argue that the state and county are not directly involved in the lawsuit and are not proper party defendants.

In *Hein v. Burns,* 402 F.Supp. 398 (S.D.Iowa 1975), (three-judge court), the court held that an action against government agents based on allegations that regulations promulgated pursuant to the Food Stamp Act were inconsistent with the Act and violated the Constitution was not barred by the doctrine of sovereign immunity. The court ruled that the claims of the plaintiffs fell within the exceptions to the doctrine set forth by the Supreme Court in *Malone v. Bowdoin,* 369 U.S. 643, 647, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962), and *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689–90, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Further, the *Hein* court determined that the plaintiffs' action did "not place an undue burden upon governmental functions." *Id.* at 402. *Accord, Bennett v. Butz, supra,* 386 F.Supp. at 1063.

In the instant case, plaintiff's complaint alleges that the defendants acted beyond their statutory powers and therefore, in the court's opinion, this action falls within an exception to the doctrine of sovereign immunity. The court further rules that the burden on the government function caused by this lawsuit does not outweigh considerations of private harm. *Hein v. Burns, supra.* Plaintiff Turchin's action is not barred by the doctrine of sovereign immunity.

 Defendants Likins, Johnson, and Elfelt argue that no effective relief can be granted against them because the sole issue in this suit involves the validity of

federal regulations. Therefore, these defendants contend that plaintiff has not stated a claim against them upon which relief can be granted. Rule 12(b)(6) of the Fed.R.Civ.P. The court is of the opinion that these defendants are proper parties to this lawsuit and denies the motion to dismiss.

*Class Action*

■ Plaintiff has moved the court, pursuant to Rule 23(a) and (b)(2) of the Fed.R.Civ.P., to certify a class of all persons throughout the State of Minnesota who are receiving a work and training allowance that is included as income for determination of food stamp allotment. As a requisite to maintenance of a class suit, the burden is upon the plaintiff to show that the requirements of Rule 23 have been met. *Poindexter v. Teubert,* 462 F.2d 1096, 1097 (4th Cir. 1972); *Demarco v. Edens,* 390 F.2d 836, 845 (2d Cir. 1968).

In the case at bar, plaintiff has established that there are approximately 21 Anoka County recipients of non-WIN training allowances attending colleges and schools throughout Minnesota who are also recipients of food stamp assistance.[4] Although the statewide figures are not available,[5] the court is of the opinion that in the context of this action the numerosity requirement of Rule 23(a)(1) has been met. Further, the court is persuaded that the questions of law in this action are common to the class and that plaintiff Turchin's claims are typical. As for the final requirement of Rule 23(a)—fair and adequate protection of class interests—the court is satisfied that the interests of plaintiff

Turchin are not antagonistic to those of the class and that plaintiff's legal counsel will well represent the interests of plaintiff and the class.

In addition to having satisfied the requirements of Rule 23(a), the proposed class is also appropriate under 23(b)(2). The defendants in this case have acted on grounds generally applicable to the entire class through promulgation and enforcement of federal regulations that reduce the amount of food stamp assistance available to the class. Injunctive and declaratory relief would benefit the class as a whole.

This action may proceed as a class suit with the named plaintiff representing a class of all others similarly situated in the State of Minnesota who are recipients of a non-WIN training allowance because they are attending various educational and training courses and whose cost for food stamp coupons have been increased pursuant to regulations that include the training allowance as income for food stamp purposes but do not allow a deduction, to the extent of the training allowance, for actual expenses incident to pursuing their courses of study or training.

*Statutory Claim*

■ The Secretary of Agriculture is authorized to promulgate regulations not inconsistent with the Food Stamp Act which he deems necessary for its administration. 7 U.S.C. § 2013(c). Pursuant to this authority, the Secretary has issued regulations that include plaintiff's non-WIN training allowance as income, 7 CFR § 271.3(c)(1)(i)(f and g),[6] and disal-

---

**4.** The number of non-WIN recipients fluctuates. As of January 24, 1975, when plaintiff served requests for admissions on defendant Elfelt, there were 21 such recipients. On February 18, 1975, when responses were served by defendant Elfelt, there were 19.

Plaintiff reasons that if there are 21 such recipients in Anoka County alone it would logically follow that there are at least the same number in each of Hennepin, Ramsey, Dakota, and St. Louis counties and that the total of all of the counties in the state would swell the class to well over 100.

**5.** In the Answers and Objections to Interrogatories, defendants Likins and Johnson indicate that statewide information is not available from records maintained by the Department of Public Welfare.

**6.** (i) [I]ncome shall mean any of the following but is not limited to:

(f) Payments received from federally aided public assistance programs, general assistance programs, or other assistance programs based on need;

low the actual expenses of pursuing her course of study as a deduction from income, 7 CFR § 271.3(c)(1)(iii)(f).[7] Plaintiff alleges that these regulations deny her the benefit of the food stamp program and are inconsistent with its Congressional purpose.

Plaintiff, in the case of *Hein v. Burns, supra,* was receiving a travel allowance under the auspices of the Federal Government's Individual Education and Training Plan to help defray the cost of traveling from her home to a nearby city to partake in a nurses training course. Plaintiff Hein received a travel allowance of $44 per month which was completely spent for travel in connection with her training. *Id.* at 401. As a result of application of 7 CFR § 271.-3(c)(1)(i)(f and g) and § 271.3(c)(1)(iii)(f), the same regulations attacked in the case at bar, plaintiff Hein's travel allowance was included in income for food stamp purposes and she was not allowed a deduction for actual travel expenses thereby causing her cost for $94 worth of food stamps to increase $12. *Id.* at 405. Plaintiff Hein, on behalf of herself and the class she represented, alleged that the state and federal regulations in question were inconsistent with the Food Stamp Act, denied equal protection of the law, and denied due process of law. *Id.* at 400.

The court found that the Congressional purpose of the Food Stamp Act appeared to be two-fold: "to promote adequate nutritional levels among low income households and to stimulate the agricultural economy by encouraging purchasing of agricultural surpluses." *Id.* at 404.

The court stated:

Viewed in this perspective it is difficult to see how the challenged regula-

tions can effectuate the Congressional goals. By denying recipients of a travel allowance a deduction from 'Monthly Net Income' for such allowances, the Department of Social Services, and the Department of Agriculture, in effect, encourage the continuation of the very situation the food stamp program was designed to alleviate. Under this record the travel allowance is spent entirely to defray commuting expenses. Therefore, receipt of such allowances has no effect on food purchasing power. Yet under the current regulatory formula for computing the cost of food stamp participation, the travel allowance operates to increase the amount an effected household must pay to purchase a given quantity of food. . . .

\* \* \* \* \* \*

The literal import of the Act, as supported by what legislative history there is, indicates that Congress sought to encourage food stamp recipients to secure education and training. Commuting expenses certainly reduce the level of actually available income. Reimbursement, while partially restoring that level does not increase an individual's purchasing power. [citation omitted]

*Id.* at 405.

The *Hein* court ruled that 7 CFR § 271.3(c)(1)(iii)(f) was invalid as "inconsistent with both the remedial purposes of the act and with the Congressional purpose underlying it." *Id.* The court further ruled that the challenged regulations denied plaintiff equal protection of the law, *Id.* at 407, and due process of law, *Id.* at 408. The court enjoined the defendants from including in income the amount received as reimbursement for

---

(g) Payments received from Government-sponsored programs such as Agricultural Stabilization and Conservation Service programs, the Work Incentive Program, or Manpower Training Program;

**7.** (iii) Deductions for the following household expenses shall be made (this list is inclusive

and no other deductions from income shall be allowed):

(f) Tuition and mandatory fees assessed by educational institutions (no deductions shall be made for any other educational expenses such as, but not limited to, the expense of books, school supplies, meals at school, and transportation).

travel expense under the Individual Education and Training Plan unless a deduction was allowed for the amount actually expended.

The *Hein* decision provides strong support for plaintiff's contentions in the case presently before the court. Of even greater import, however, in the court's opinion, is the argument presented by plaintiff Turchin that the regulations are invalid because they cause Title IV–A of the Social Security Act and the Food Stamp Act to work at cross-purposes.

The purposes of the Food Stamp Act, as previously discussed, are to "strengthen our agricultural economy" and "permit low-income households to purchase a nutritionally adequate diet . . . ." 7 U.S.C. § 2011. One purpose of Title IV–A of the Social Security Act is to "help maintain and strengthen family life and to help such parents or relatives [who care for needy children] to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection . . . ." 42 U.S.C. § 601.[8]

Under the authority of Title IV–A of the Social Security Act, Minnesota has established the non-WIN training allowance as part of its Social Service Program. This training allowance is provided to cover the incidental expenses of attending school, such as transportation and books. The allowance works toward the overall purpose of Title IV–A of the Social Security Act (and the Minnesota Department of Public Welfare) in helping the AFDC recipient become self-sufficient and attaining financial independence.[9]

Plaintiff Turchin receives a $40 per month non-WIN training allowance from Anoka County under the auspices of Title IV–A of the Social Security Act as a recipient of AFDC. Plaintiff Turchin is also a recipient of benefits under the Food Stamp Act.[10] Pursuant to the regulations of the Department of Agriculture, the $40 that plaintiff receives as a training allowance to help her attain self-sufficiency and independence is included as a source of income in the food stamp determination and serves to reduce her benefits under the food stamp program. Since plaintiff spends the entire training allowance for expenses incident to her education, she actually loses $18 per month for herself and her family by way of higher costs for food stamp coupons because she is engaging in another government program to attain self-sufficiency. The food stamp regula-

---

**8.** This broad Congressional purpose is further implemented by statutory language which requires participating AFDC states to provide a program of services for its recipients. 42 U.S.C. § 602 provides in part:

> (a) A State plan for aid and services to needy families with children must . . . (14) provide for the development and application of a program for such family services, as defined in section 606(d) of this title . . for each child and relative who receives aid to families with dependent children . . . as may be necessary . . . in order to assist such child, relative, and individual to attain or retain capability for self-support and care . . . .

Family services is defined in 42 U.S.C. § 606(d) as follows:

> The term 'family services' means services to a family or any member thereof for the purpose of preserving, rehabilitating, reuniting, or strengthening the family, and such other services as will assist members of a family to attain or retain capability for the

maximum self-support and personal independence.

**9.** The State of Minnesota Department of Public Welfare views vocational and academic training as an important aspect of attaining self-sufficiency.

> Non-WIN Institutional Training: It is known that immediate job placement is not a long-range solution to welfare dependency for many unskilled AFDC recipients. In order for recipients to become competitive in the labor market for wages sufficient to support a family, it is often necessary to upgrade the marketable skills through vocational and academic training of persons who would otherwise be merely marginally employed in low-paying, dead-end, highly vulnerable jobs.

State of Minnesota Department of Public Welfare, 1972 Policy Bulletin # 51.

**10.** The AFDC program is administered by the Department of Health, Education and Welfare and the Food Stamp Act is administered by the Department of Agriculture.

tions, as currently formulated, act as a disincentive to partaking in non-WIN training benefits and can hardly be harmonized with the intent of Congress evidenced in Title IV-A of the Social Security Act.

In *Elam v. Hanson,* 384 F.Supp. 549, 551 (N.D.Ohio 1974), the court faced the issue of "whether monies received under the [Old Age, Survivors and Disability Insurance] OASDI program is to be included within the available income definition for purposes of determining AFDC benefits." The court analyzed the Congressional purposes of the two separate programs and concluded that the OASDI program "seeks to aid a recipient in obtaining an education while . . . AFDC . . . seeks to assist in the case of dependent children in their own homes or the home of a relative." *Id.* at 553. The court concluded that the amounts received by the OASDI recipient for obtaining an education should be excluded from the determination of "available income" for AFDC purposes because to do otherwise "defeats the purpose of both programs." *Id.* at 552, 553. The court stated:

> It amounts to the federal government holding out a promise of aid for education with one hand and at the same time with the other hand having the state government, spurred by federal regulations, destroying that promise of aid. . . ."

*Id.* at 553. *See also Hamilton v. Butz,* 520 F.2d 709 (9th Cir. 1975); *Anderson v. Butz* (E.D.Cal., October 6, 1975).

Based upon the reasoning in *Hein v. Burns, supra,* and *Elam v. Hanson, supra,* the court is compelled, albeit reluctantly,[11] to reach the conclusion that the regulations in question are invalid to the extent that they include plaintiff's non-WIN benefits as "income" for a determination of food stamp benefits and do not allow a deduction, to the extent of the

training allowance, for actual expenses incident to pursuing her course of study.

Upon the foregoing,

It is ordered That the motion of the plaintiff to certify as a class action be and the same hereby is granted. The class shall include plaintiff and all others similarly situated in the State of Minnesota who are recipients of a non-WIN training allowance because they are attending various educational and training courses and whose cost for food stamp coupons have been increased pursuant to regulations that include the training allowance as income for food stamp purposes but do not allow a deduction, to the extent of the training allowance, for actual expenses incident to pursuing their courses of study or training.

It is further ordered That the motion of plaintiff for summary judgment be and the same hereby is granted and the clerk shall enter judgment as follows:

1. Enjoining the defendants, their successors in office, their agents and employees and all other persons in active concert and participation with them from including in the income of plaintiff and the members of the class for purposes of determining food stamp benefits that amount received as a non-WIN training allowance for education and training unless they are allowed a deduction, to the extent of the training allowance, for actual expenses incident to pursuing their courses of study or training.

2. Ordering the defendants to recompute the income for each of the above persons who are presently participating in the food stamp program and who have been paying a wrongfully high price for their food stamp allotment and ordering the defendants to make a forward adjustment of the price of

---

**11.** This court concurs with the observations of Judge Dumbald in *Tindall v. Hardin,* 337 F.Supp. 563, 564 (W.D.Pa.1972), *aff'd sub nom., Carter v. Butz,* 479 F.2d 1084 (3d Cir. 1973), that judges often find themselves "wrestling with matters which more fittingly ought to be handled in other forums."

food stamp coupons in future months by whatever amount necessary for as many months as necessary so as to fully compensate the recipients financially for food stamps wrongfully denied in the past.

It is further ordered That the motion of defendants Butz, Feltner, and Shipp to dismiss the complaint on the grounds that the court lacks personal and subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted be and the same hereby is denied.

It is further ordered That the motion of defendants Butz, Feltner, and Shipp for an order granting summary judgment in their favor be and the same hereby is denied.

It is further ordered That the motion of defendants Likins, Johnson, and Elfelt to dismiss the complaint on the grounds that the complaint fails to state a claim upon which relief can be granted be and the same hereby is denied.

It is further ordered That execution of the judgment herein ordered be stayed until February 15, 1976.

It is further ordered That in the event defendants timely file and proceed with an appeal from the judgment herein ordered to be entered, that execution of said judgment be suspended without bond or security pending the ultimate determination of such appeal.